Jasen, J.
On April 24, 1972, the Suffolk County police, executing a search warrant at the premises of Douglas Hicks, found evidence implicating Hicks in a number of burglaries. As a result, Hicks was indicted for the crime of burglary in the third degree and for two counts of grand larceny in the third degree. Hicks also faced a charge of petit larceny, lodged against him in the District Court of Suffolk County. After an unsuccessful attempt to controvert the search warrant, the defendant pleaded guilty in the County Court to two counts of petit larceny, in full satisfaction of all the charges in the indictment. He also pleaded guilty to the petit larceny charge filed in the District Court. The Appellate Term affirmed the judgments of conviction.
The sole issue presented for our consideration is whether there was probable cause to support the issuance of the search warrant. The police officer who applied for the warrant based his application entirely upon the sworn statement of one Kenneth Leone. The Leone affidavit was annexed to the warrant application and was directly before the Magistrate who issued the warrant. The first paragraph of the Leone affidavit consisted entirely of statements shedding light on Leone’s personal background. Leone averred that he was 18 years old, single, unemployed, and that he resided with his parents at an address in Greenlawn, New York. Leone also set forth his home telephone number. The remainder of the affidavit recited personal observations Leone had made and a report of statements he heard while at Hicks’ Huntington Beach residence two weeks earlier. While there, Leone, Douglas Hicks and Emil Hicks, Douglas’ brother, went into Doug *92 las’ bedroom to drink beer and listen to stereo music. There was a safe in the bedroom. Douglas Hicks told Leone that he and three others (including another Hicks brother) had "ripped off a house” and had stolen the safe. Douglas Hicks opened the safe, and a third individual, Robert Haff, removed a shoebox "half full of grass [marijuana].” Leone observed that there were also some fireworks inside the safe. Douglas Hicks, apparently quite proud of his criminal activity, told Leone that the stereo equipment in the bedroom had been stolen from a house. To top off the litany of crime, Hicks stated that he also stole a new engine and two high-back bucket seats for his car. Based on this information, duly sworn to by Leone, a search warrant was issued.
The appellant’s sole contention is that the search warrant was invalid since the supporting papers did not establish the reliability of Leone as an informant. We disagree. The Leone affidavit was a sworn statement of an identified member of the community attesting to facts which the affiant had directly and personally observed. Such an affidavit, by an identifiable member of the community, sufficiently supports the issuance of a search warrant.
While it is one of the fundamental precepts in our law that warrants authorizing the search of private residences may not issue except upon probable cause based on the facts presented to the issuing officer under oath or affirmation (US Const, 4th Arndt; CPL 690.10; 690.35, subd 2; Nathanson v United States, 290 US 41, 47), the requirement of probable cause is satisfied where the issuing officer has knowledge, derived from a reasonably trustworthy source, of facts and circumstances "sufficient in themselves to warrant a man of reasonable caution in the belief’ that a crime has been committed. (Draper v United States, 358 US 307, 313; Carroll v United States, 267 US 132, 162.) The warrant requirements of both the State and Federal Constitutions (NY Const, art I, § 12; US Const, 4th Arndt) are designed to protect the privacy of individual citizens from police intrusion unless, in the independent judgment of a neutral and detached Magistrate, there is sufficient information indicating the individual’s involvement in criminal activity. (People v Hanlon, 36 NY2d 549, 558.)
The affidavit presented to the District Court in this case sufficiently meets this standard. The informer was named, the information involving the defendant in criminal activity was set out in detail, as was the means by which he acquired the *93 information. The informer related criminal activity that he had personally observed and heard on the premises in question. The information furnished was not based upon casual rumor, surmise, suspicion or general reputation of the defendant. (See Spinelli v United States, 393 US 410, 416; Nathanson v United States, 290 US 41, 47, supra.) In addition, informant’s name, residence and telephone number were disclosed to the Magistrate. From this sworn information, the Magistrate could have reasonably believed that Hicks had committed criminal acts, the fruits of which were openly stored in and about his residence.
The appellant argues that the two-pronged Aguilar-Spinelli test, which requires that the informer’s reliability be demonstrated either by independent corroborative verification of his tale or by a showing that the same informer previously supplied accurate information, was not met in this case. (Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410, supra; see, also, People v Hanlon, 36 NY2d 549, 556-557, supra.) However, we are not dealing with a situation in which it is appropriate to apply so exacting an analysis. Unlike Aguilar and Spinelli, the affiant in this case is not a police officer repeating a story told to him by a "reliable” informant; instead, the information furnished the court came directly from the informer’s sworn statement, without the benefit of filtering by the police. The Aguilar-Spinelli test is appropriate where the affiant has no direct knowledge of the information and where the Magistrate has no statement emanating directly from the one who does have personal knowledge. Thus, in Spinelli, the court found the police affidavit faulty in that there was no basis upon which to credit the police officer’s statement that the informant was reliable. In addition, the Magistrate had not been told how the informant came by his information—whether through direct observation or underworld rumor. (393 US, at p 416.) To have sustained the validity of the Spinelli affidavit would have been to permit search warrants to issue on the oath of a police officer that someone else had the reliable information necessary to establish probable cause. No such danger is presented in this case. The court knew who the informer was, how he came by the information, and exactly what the informer had to offer. To require more, under the circumstances presented, would mean that only the affidavits of professional informers, who oft times demonstrate a greater proclivity to falsity, could present *94 enough to make out probable cause. Such a result is patently absurd. The sworn statements of private citizens, who report crime in an honest and forthright manner, may, and should be relied upon by the police and the courts as a basis for further action. It is not uncommon to place such heavy reliance upon the role of citizen informers. For example, an information, a misdemeanor complaint and a felony complaint may be sworn out by "any person having knowledge, whether personal or upon information and belief, of the commission of the offense or offenses charged.” (CPL 100.15, subd 1.) In order to protect persons from groundless prosecutions, we require that the complainant have reasonable grounds for his belief and that the information contain "legal evidence” of the commission of a crime. (People v James, 4 NY2d 482, 486; People ex rel. Livingston v Wyatt, 186 NY 383, 391; see, also, People v Jeffries, 19 NY2d 564.) The average citizen who provides the authorities with information as to observed criminal activity does so with no expectation of private gain. Rather, he aids the police in enforcing the laws in order to promote the safety and order of the society as a whole. As a court, we cannot hold that citizen informers are as inherently suspicious individuals as the underworld denizen upon whose oath, out of necessity, law enforcement officials must often rely. To do so would be to denigrate the character of public-spirited citizens. Instead, such civic-mindedness should be encouraged and applauded.
We also point out that there are adequate safeguards against the rendition of false information. The affidavit, such as was submitted by the informer, on its face, contained a warning that the giving of a false statement constituted a violation of the Penal Law. (Penal Law, § 210.45.) The averments made by the informant were then declarations against his penal interest. (People v Wheatman, 29 NY2d 337, 345, 31 NY2d 12, cert den sub nom. Marcus v New York, 409 US 1027, rehearing den 409 US 1119.) The threat of possible prosecution in this case was not an empty gesture, as the police had the informant’s name and address, and could track the informer down if necessary. (See State v Lindquist, 295 Minn 398, 400.) Nor is criminal punishment the only sanction that might be imposed. An informer may be subject to civil damages for malicious prosecution where he furnishes false information causing a person’s premises to be unlawfully searched. (See Halberstadt v New York Life Ins. Co., 194 NY *95 1; Burt v Smith, 181 NY 1; Prosser, Torts [4th ed], § 119, pp 835-837; 79 CJS, Searches and Seizures, § 74, subd e, par [2], pp 871-872.)
We conclude that the Leone affidavit was properly relied upon to establish the existence of probable cause warranting a search of the defendant’s premises. Accordingly, the motion to suppress the evidence obtained by the search was properly denied.
The order of the Appellate Term should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.