THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
FELIPE CANTRE and MAYRA AYALA, Respondents.

Second Department, October 11, 1983

**APPEARANCES OF COUNSEL**

*Elizabeth Holtzman, District Attorney (Bruce B. Berger*
and *Joel M. Goldberg* of counsel), for appellant.

*Manuel Nelson Zapata (Jerald Rosenthal* of counsel), for
Felipe Cantre, respondent.

*Robert I. Strougo* for Mayra Ayala, respondent.

**OPINION OF THE COURT**

MOLLEN, P. J.

On this appeal, the People challenge an order which
granted the defendants' motions to controvert a search
warrant and to suppress the evidence seized under its
authority. The warrant was issued upon information pro-
vided by one Rafael Lopez. The central question is whether
the Judge who issued the warrant was justified in conclud-
ing that Mr. Lopez was a reliable informant.

On December 11, 1980, Detective Richard Sanchez appeared in Criminal Court, Kings County, with an application for a warrant authorizing the search of a certain Brooklyn apartment. In his affidavit in support of the application, Detective Sanchez averred in part as follows: "I have information based upon statements made to me by Rafael Lopez, Jr. of Brooklyn, NY concerning a burglary that occured [sic] at a jewelry store at 1672 Pitkin Avenue, Bklyn, during the weekend of December 5-7, 1980. The informant has stated to me that at 2 AM in the lobby of 301 Sutter Ave, he saw four men known to him enter the lobby carrying sacks containing various items including gold watches, necklaces, chains, rings, coins and a quantity of U.S.C. and that one of the men Felipe Cantre who resides at 301 Sutter Ave, Apt 2B boasted that the property was 'all theirs' and thaey [sic] had just 'hit' a jewelry store. Informant further stated to me that he went into the apartment of Felix Cantre and Alberto Ayala, one of the four men who entered the lobby, and was shown the jewelry again. Informant tells men [sic] that at 4:45 P.M. on 12/11/80 he was again present in Apt. 2B with Felipe Cantre that Cantre again showed him various items of gold including a medallion, chains, 2 rings and several watches and said that the items were from the jewelry store on Pitkin Avenue."

The court granted the application and issued a warrant authorizing the search of the apartment. The search uncovered various items of jewelry which had been stolen from the Pitkin Avenue jewelry store. Both defendants were arrested at the time of the search.

Following their indictment, the defendants moved to controvert the warrant and suppress the evidence seized in the apartment. At the subsequent suppression hearing, the People called Detective Sanchez who testified that sometime between Friday, December 5 and Sunday, December 7, 1980, a jewelry store on Pitkin Avenue in Brooklyn was burglarized, and that he was assigned to investigate the crime. Some three days later, the detective received an anonymous telephone call from a man who claimed to have information about the burglary. The anonymous caller also inquired about reports that a $5,000 reward had been

posted for the return of the property and the arrest of the individuals involved. The detective confirmed that a reward had been offered and told the caller that, if his information proved to be true and led to the recovery of the property and the arrest of the perpetrators, the "proper persons" would be informed.

Later that day, the detective met the caller who proved to be Rafael Lopez, an unemployed 19 year old with no prior criminal convictions. Mr. Lopez told the detective that, on the night of the burglary, he was in the lobby of 301 Sutter Avenue when defendant Cantre approached him and asked "if he wanted to accompany them for a score to make some money". Lopez refused the offer and remained in the lobby. A few hours later, Cantre and three others returned, carrying shopping bags filled with jewelry. Cantre saw Lopez and waved cash in his face. He boasted that he and his companions had just "hit" a jewelry store, and said, "You see what I mean, man. You should have came [sic] with us." Lopez then accompanied Cantre and the others to apartment 2B but did not enter. Mr. Lopez told Detective Sanchez that the apartment was shared by defendants Cantre and Ayala.

The day after meeting Detective Sanchez, Mr. Lopez twice returned to the precinct to give him additional information. Lopez reported that earlier that day he had been allowed to enter the defendants' apartment and, while inside, had seen Cantre remove jewelry from a kitchen cabinet. Cantre had shown Lopez some 20 items, including watches and chains.

Subsequently, an application for a search warrant, identifying Rafael Lopez as the source of information linking the defendants to the Pitkin Avenue burglary, was presented to the issuing Judge by Detective Sanchez. Mr. Lopez was sitting in the first row of the courtroom during this presentation. In the course of the subsequent suppression hearing, the detective testified that he thought that he had informed the issuing Judge of Mr. Lopez' presence and may have even pointed him out. However, the Judge was not advised that Mr. Lopez inquired about the $5,000 reward or that Detective Sanchez had given him a nominal

amount for "food money" ($30 to $40). Mr. Lopez was not called upon by the Judge to make a statement.

Criminal Term granted the defendants' motions, reasoning that the information presented to the issuing Judge was insufficient to establish the informant's reliability. We now reverse.

It has long been the rule that, where an application for a search warrant is based not upon the affiant's personal knowledge but upon information provided to him by an informant, a warrant may issue only if the Judge to whom the application is addressed finds sufficient grounds to conclude both that the informant was reliable and that his information was credible (see, e.g., *Aguilar v Texas,* 378 US 108). Stated otherwise, this two-pronged test requires that the issuing Judge be apprised of "some of the underlying circumstances from which the officer concluded that the informant was credible or reliable" and "some of the underlying circumstances from which the informant concluded that illegal activities were taking place" (*People v Wirchansky,* 41 NY2d 130, 131; see, also, *People v Elwell,* 50 NY2d 231, 236; *People v West,* 44 NY2d 656, 657; *People v Hanlon,* 36 NY2d 549, 556). Although the Supreme Court has recently held that strict adherence to the two-pronged test is no longer required as a matter of Federal constitutional law (see *Illinois v Gates,* 462 US __, 51 USLW 4709), we need not reach the issue of whether such adherence remains a requirement of our State Constitution. We hold only that, in the case at bar, the two-pronged test was satisfied.

All members of this court agree with Criminal Term's finding that the issuing Judge was sufficiently apprised of "some of the underlying circumstances from which the informant concluded that illegal activities were taking place" (*People v Wirchansky, supra,* p 131; see, also, *Aguilar v Texas, supra,* p 114). The application for the warrant asserted that Mr. Lopez had seen the proceeds of the robbery on three separate occasions, twice in the apartment shared by the two defendants. Mr. Lopez had reported further that defendant Cantre had boasted to him that he and his companions had "hit" a jewelry store. Thus, the application was sufficient to demonstrate that Mr.

Lopez' information was based upon his personal observations and upon statements made directly to him.

The question dividing this court is whether the issuing Judge was sufficiently informed of "some of the underlying circumstances from which [Detective Sanchez] concluded that [Mr. Lopez] was credible or reliable" (*People v Wirchansky, supra,* p 131; see, also, *Aguilar v Texas, supra*). The answer to this question depends at least to some extent upon Mr. Lopez' status as an informant.

The law is well settled that, for the purpose of establishing reliability or credibility, identified private citizens providing law enforcement officers with information pertaining to criminal activity are to be treated differently from unnamed confidential paid informants (see, e.g., *People v Hicks,* 38 NY2d 90, 94; *United States v Fooladi,* 703 F2d 180, 182-183; *United States v Dennis,* 625 F2d 782, 791; *United States v Burke,* 517 F2d 377, 380; *United States v Bell,* 457 F2d 1231, 1238-1239; *United States v Nilsen,* 482 F Supp 1335, 1340; *United States v LaFond,* 482 F Supp 1379, 1384; *People v Inman,* 80 AD2d 622; *People v Crespo,* 70 AD2d 661; *People v Hyter,* 61 AD2d 990). The "stringent tests of credibility", obligating the search warrant applicant to satisfactorily establish the informant's credibility or reliability, are applicable to the unidentified, paid professional informant (see, e.g., *United States v Dennis, supra,* p 791). In the case of a citizen informant, "there is 'built in' a substantial basis for crediting [his] reliability * * * and the credibility of his conclusion [that illegal activities were taking place]" (*United States v Nilsen, supra,* p 1340). An issuing magistrate may reasonably rely on the information supplied by the latter (see, e.g., *United States v McCrea,* 583 F2d 1083, 1085).

The dissenter recognizes as much but is of the opinion that Mr. Lopez was "[s]tripped of the citizen-informant label" by the complainant's public offer and subsequent payment of a reward, and the detective's payment of a nominal amount for food. Consequently, the dissenter argues, Mr. Lopez ought properly to be treated as a paid informant, and Detective Sanchez was required to present evidence to the issuing magistrate which would permit him to conclude that Mr. Lopez was reliable. The absence

of this information, the dissenter concludes, is fatal to the issuing Judge's finding of probable cause. We are unable to subscribe to these views.

Under the circumstances of this case, we think that the issuing Judge properly concluded that the information presented to him in Detective Sanchez' application for a search warrant came from a presumptively reliable source. Mr. Lopez came forward as an ordinary citizen and reported criminal activity of which he had become aware. The affidavit identified Mr. Lopez by name. At the suppression hearing, Detective Sanchez testified that he believed that he told the issuing Judge that Mr. Lopez was in court and may have pointed him out. Criminal Term expressly found that Mr. Lopez was present when the warrant was signed. The record before us establishes that the issuing Judge was presented with an affidavit recounting the first-hand observations and conversations of an identified private citizen who was available to the Judge for questioning.

The interest of Mr. Lopez in the availability of a reward and its subsequent payment by the grateful owners of the jewelry store should not *retroactively* alter Mr. Lopez' status as a citizen informer. There is no evidence that the reward was exacted as the price for his co-operation with Detective Sanchez. The reward was publicly offered before Mr. Lopez went to the police, and was available to anyone providing information leading to the return of the stolen property and arrest of the perpetrators. Detective Sanchez' role was limited to informing the "proper persons" about Mr. Lopez', and anyone else's, co-operation. Upon notification, the "proper persons", not Detective Sanchez, were to determine whether payment would be made, and to whom. While the availability of the reward may explain Mr. Lopez' motivation in providing information to the police, it does not lessen his credibility. On the contrary, the terms of the reward only enhanced Mr. Lopez' credibility since, in order for him to be eligible for the reward, his information had to lead to the return of the property and the perpetrators' arrest (cf. *United States v Copeland,* 538 F2d 639; *United States v Hodges,* 705 F2d 106). We are simply unpersuaded that the subsequent payment of a reward, a

matter which was beyond the control of law enforcement officers, had the effect ascribed to it by the dissenter.

Similarly, in the context of this case, we view the payment of a nominal amount for "food money" to be innocuous. What appears from the record is that the money was given to Mr. Lopez by a detective who was grateful for his assistance and who wanted to show his appreciation to a 19-year-old unemployed youth by offering to help him with money for food. Surely, the payment was not a bargained for consideration given in return for Mr. Lopez' co-operation.

In restating its strong preference for search warrants, the Court of Appeals has observed: "Where a search warrant has been secured, the *bona fides* of the police will be presumed and the subsequent search upheld in a marginal or doubtful case. * * * [S]earch warrant applications should not be read in a hypertechnical manner as if they were entries in an essay contest. On the contrary, they must be considered in the clear light of everyday experience and accorded all reasonable inferences" (*People v Hanlon,* 36 NY2d 549, 558-559).

In our view, where the police act in accordance with the authority of a court-issued search warrant, it serves no interest protected by the Fourth and Fourteenth Amendments to apply hypertechnical rules to suppress evidence simply because the private citizen who came forward with crucial information later received a reward from the grateful victim of the crime. We hold that under either the *Aguilar-Spinelli* test or the new test enunciated by the Supreme Court in *Illinois v Gates* (462 US __, 51 USLW 4709, *supra*) the record establishes that the issuing Judge had a substantial basis for concluding that there was probable cause to believe that contraband would be found in the defendants' apartment. Accordingly, Criminal Term's order should be reversed and the defendants' motions to suppress should be denied.

TITONE, J. (dissenting). In my opinion, Criminal Term properly granted the motions to suppress. Therefore, I dissent and vote to affirm.

It is undisputed that the informant, Mr. Lopez, received a reward from the owner of the jewelry store and food

money amounting to $30 or $40 from Detective Sanchez during the course of their meetings. Although, as the majority notes, he may not have been the classic professional informant, i.e., constantly giving the police tips for money based on "underworld" connections or in exchange for leniency, it is equally evident that he is neither the classic eyewitness citizen reporting a crime solely for the good of the community, nor a crime victim (see *People v Schulle,* 51 Cal App 3d 809, 814, and cases cited therein; cf. *People v Hicks,* 38 NY2d 90).[1] In short, he was not a mere good samaritan. Courts should be wary of information received in exchange for something of value.

The issuing court, moreover, manifested little awareness about the informant. It did not know that Mr. Lopez was being paid for the information and, while Mr. Lopez was in court, the evidence is inconclusive as to whether the Judge even knew that he was there. In any event, the Judge definitely did not speak with him.

Under the traditional formulation, in order to establish probable cause for the issuance of a search warrant, based on an informant's hearsay statements, "the affidavit [must] show (1) whether the informant is in fact reliable, and (2) whether the underlying circumstances as to how the informant came by his information demonstrates sufficient probability of credibility to allow the search of the premises or person in question" (*People v Hendricks,* 25 NY2d 129, 133; see, also, *People v Hanlon,* 36 NY2d 549).[2]

I agree that the second "prong" is satisfied here. It is the first, the reliability of Mr. Lopez, that is the crucial issue.

1. "The courts have recognized a distinction between informers who are virtual agents of the police and 'citizen informants' who are chance witnesses to or victims of crime. The former are often criminally disposed or implicated, and supply their 'tips' to the authorities on a recurring basis, in secret, and for pecuniary or other personal gain. The latter are innocent of criminal involvement, and volunteer their information fortuitously, openly, and through motives of good citizenship" (*People v Ramey,* 16 Cal 3d 263, 268-269).

2. During the pendency of this appeal, a bare majority of the Supreme Court abandoned this test as a matter of Federal constitutional law (*Illinois v Gates,* 462 US __, 103 S Ct 2317). This is quite irrelevant for our purposes. While the Court of Appeals has adopted the Supreme Court's relaxation of Fourth Amendment strictures in some instances (e.g., *People v Ponder,* 54 NY2d 160), the two-pronged criteria set forth in *Aguilar v Texas* (378 US 108) and *Spinelli v United States* (393 US 410) have been deemed applicable to search warrants as a matter of State law (NY Const, art I, § 12; see *People v Elwell,* 50 NY2d 231, 235; *People v Hanlon,* 36 NY2d 549, 557-558; *People v Landy,* 59 NY2d 369).

The issuing court simply did not have "adequate safeguards against the rendition of false information" (*People v Hicks,* 38 NY2d 90, 94, *supra*). As Justice SCHWARTZWALD explained in his opinion at Criminal Term, there were many ways in which Mr. Lopez' reliability could have been established: "The informant (who was present when the application for the warrant was made but never, apparently, was questioned or otherwise acknowledged by the court) could have been found reliable or trustworthy had various other factors been present, even though he had never supplied information to the police before. His reliability could have been established by an affidavit (*People v Hicks,* 38 NY2d 90 [1975]); by sworn testimony (*People v Wheatman,* 29 NY2d 337 [1971]); or even by unsworn testimony to the issuing court (*People v Brown,* 40 NY2d 183 [1976]); or if his statement was clearly against his penal interest (*United States v Harris,* 403 US 573 [1971]); or if his information was corroborated by police observations (*People v Hendricks,* 25 NY2d 129 [1969]; *United States v Rollins,* 522 F2d 160 [2d Cir, 1975]; *United States v Bozza,* 365 F2d 206 [2d Cir, 1966]); or by other informants' corroborative statements (*People v Wheatman,* 29 NY2d 337)." In addition, it has been held that an informant's reliability can be established by a signed statement on a form notice authorized by section 210.45 of the Penal Law (*People v Sullivan,* 56 NY2d 378).

The cases cited by the majority are inapposite. All involve the victims of crime or totally disinterested witnesses for which a predicate for reliability had been set forth. In fact, I note that in *People v Hicks* (38 NY2d 90, 91, 94, *supra*), "the sworn statement" of the informant "was annexed to the warrant application and was directly before the Magistrate who issued the warrant" and that the Court of Appeals expressly distinguished such a circumstance from that now before us: "The average citizen who provides the authorities with information as to observed criminal activity does so with no expectation of private gain".

Stripped of the citizen-informant label, there was no evidence presented to the issuing court which would permit it to conclude that Mr. Lopez was reliable. Citizen-informant "status cannot attach if the affidavit is silent

thereon. The affidavit must *affirmatively* set forth the circumstances from which the existence of the status can reasonably be inferred by a neutral and detached magistrate" (*People v Smith,* 17 Cal 3d 845, 852). The affidavit simply states that a named individual had given information concerning a burglary of a jewelry store. Nothing is said about that individual's background or motivation. Such an affidavit is deficient (see *People v Herdan,* 42 Cal App 3d 300).

The warrant requirements of the State Constitution are not "hypertechnical" incantations. Rather, they are designed to protect the privacy of our citizens from police intrusion unless a neutral magistrate is convinced that there is probable cause to believe that criminal activity has occurred (*People v Hanlon,* 36 NY2d 549, 558, *supra*). If the application fails to pass muster, aphorisms and constructional guides cannot change the result (*People v Hendricks,* 25 NY2d 129, 137, *supra*).

In sum, the search warrant, based solely upon the hearsay informant of unproven reliability, was properly held to be invalid and the property seized under its authority suppressed (CPL 710.20). Accordingly, the order appealed from should be affirmed.

DAMIANI and BRACKEN, JJ., concur with MOLLEN, P. J.; TITONE, J., dissents and votes to affirm the order in an opinion.

Order of the Supreme Court, Kings County, dated December 3, 1981, reversed, on the law and the facts, motions denied, and matter remitted to Criminal Term for further proceedings.