THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID SIMON, Appellant.

Fourth Department, March 1, 1985

APPEARANCES OF COUNSEL

*Anthony F. Leonardo, Jr.,* for appellant.

*Howard R. Relin, District Attorney* (*Elizabeth Clifford* of counsel), for respondent.

### OPINION OF THE COURT

DILLON, P. J.

On September 21, 1982 at about 12:15 A.M., police officers, acting pursuant to a no-knock search warrant, entered and searched the apartment of one Diana Schofield at 239 Pearl Street in the City of Rochester. No one was present in the apartment when the police entered. They seized a large quantity of dynamite, as well as detagel, blasting caps and other items. At trial it was established that defendant was Schofield's boyfriend.

■ The prosecution proceeded on the theory that defendant had constructive possession of the explosives and the jury found him guilty of criminal possession of a weapon in the first degree (Penal Law § 265.04) and criminal possession of a weapon in the third degree (Penal Law § 265.02 [2]). Since the evidence was insufficient as a matter of law to prove constructive possession, we reverse the judgment and dismiss the indictment.

The record contains no evidence that defendant ever had actual physical possession of the seized contraband. In the absence of such proof, the burden was upon the People to show that defendant exercised "dominion or control over" the explosives found in the Schofield apartment (Penal Law § 10.00 [8]). This could have been accomplished, of course, by demonstrating that defendant had exercised dominion or control over the apartment or of the area in which the explosives were found (*see, People v Watson,* 56 NY2d 632; *People v Cicero,* 106 AD2d 901). In that connection the officer who executed the warrant testified that in addition to the explosives, the police seized personal papers addressed to the defendant and a jacket containing a slip of paper with the defendant's name on it. The personal papers were not addressed to 239 Pearl Street, however, and no other male clothing or personal items were found. No evidence was offered that defendant ever lived in the apartment (*cf. People v Watson, supra*) or that he had a key to it (*cf. People v Robertson,* 48 NY2d 993). The proof demonstrated only that he was an occasional visitor at the apartment (*cf. People v Cicero, supra*). On such evidence it could not be concluded that the defendant exercised dominion or control over the searched premises (*People v Clinkscales,* 73 AD2d 815).

Of the 17 sticks of dynamite which were seized, some were found in plain view and the rest were found in a tool box. While there was testimony that two weeks prior to the search, defendant had been seen in possession of an olive green tool box and that four days prior to the search, he had been seen in possession of a gray tool box containing a foot-long stick with a brown wax cover which looked like the seized dynamite, there was no other evidence connecting the defendant to either the tool box or the dynamite found in Schofield's apartment. In sum, the evidence was insufficient to demonstrate that defendant was in constructive possession of the explosives.

██ ██ Having thus viewed the evidence, we need not decide whether the warrant to search the Schofield apartment was issued upon probable cause. In the interest of judicial economy, however, it may be appropriate to do so. In that regard, it is first to be observed that defendant, having no reasonable expectation of privacy in Diana Schofield's apartment, did not have standing to contest the search (*People v Ponder,* 54 NY2d 160). The standing issue not having been raised, however, the question presented is whether there was probable cause for the issuance of a search warrant by a magistrate having before him the "deposition" of a private citizen asserting that the tenant of the premises to be searched had told him that there were "two cases of dynamite in her apartment on Pearl Street". We hold that there was probable cause to search the apartment.

The application for the warrant was made by a police officer upon his deposition and the affirmation of one John Pealo. Both were to the effect that Diana Schofield had on the previous evening stated to Pealo that there were two cases of dynamite in her apartment. Since Pealo's affirmation contained a statement that giving false information would constitute a misdemeanor, it was the equivalent of a deposition (*People v Sullivan,* 56 NY2d 378; *see,* CPL 690.35 [2] [c]). Pealo's status as a private citizen is sufficient to establish his reliability (*People v Hicks,* 38 NY2d 90). Moreover, Pealo identified his informant and stated the basis of his knowledge, thus demonstrating that his information was not mere rumor.

██ That Pealo's deposition contained the hearsay statements attributed to Diana Schofield is not fatal to the application (*People v Hanlon,* 36 NY2d 549). It merely required that the magistrate be satisfied as to the reliability of Schofield and the basis of her knowledge (*Aguilar v Texas,* 378 US 108). Since Schofield was also a private citizen, and the statement attributed to her was adverse to her penal interest, she was a reliable

informant (*People v Wright,* 37 NY2d 88). The basis of her knowledge was obvious; she was the best source of knowledge of the contents of her apartment. In these circumstances, the issuing magistrate had probable cause to believe that dynamite might be found in Diana Schofield's apartment (*see, People v Plevy,* 52 NY2d 58, 67).

Finally, we note that no other issues raised by defendant would require a reversal.

Accordingly, for reasons previously stated, the judgment should be reversed and the indictment dismissed.

GREEN, J. (concurring). I agree that the proof at trial was insufficient to establish beyond a reasonable doubt defendant's constructive possession of explosives seized from Diana Schofield's apartment. I write separately, however, to express my view that a reversal is also required because the search warrant upon which the explosives were seized was not supported by probable cause.

Defendant was convicted of criminal possession of a dangerous weapon in the first degree (Penal Law § 265.04), and criminal possession of a weapon in the third degree (Penal Law § 265.02 [2]) based upon the seizure of explosives, pursuant to a search warrant, from an apartment leased to his girlfriend, Diana Schofield. The application in support of the search warrant consisted of two affidavits. In one, John Pealo stated that "On 9/19/82 at approx. 10:30 a.m. I was at 39 Rosedale St. While I was there, Diana Schofield told me that her boyfriend Dave Simon [defendant] had two cases of dynamite in her apartment on Pearl St. I'm not sure what the number is on Pearl St. but the owner of the house is Ruth Anderson. I have heard from other people that Simon intends on using the dynamite to kill me." In the other affidavit, Police Officer Richard McCory stated that at approximately 8:45 P.M. on September 20, 1982, he had a conversation with John Pealo who resided at 284 Pearl Street and that the "sum and substance of said conversation was that dynamite was being stored at number 239 Pearl Street, Rochester, New York, the apartment of one Diana Schofield and David Simon the residents of said location." Officer McCory stated further that on September 20, 1982 he "did conduct criminal record checks on Diana Schofield and Richard [*sic*] Simon. Said record check proved that David Simon * * * has a total of six arrests between 10/14/74 and 9/8/77 in New York State."

The issue thus posed is whether, based solely on these two affidavits, the search warrant was issued upon probable cause.

The suppression court determined that it was (*People v Simon,* 118 Misc 2d 745). I disagree.

At the outset, I note that the People have waived their argument that defendant lacks standing to contest the validity of the search warrant. The People did not argue the standing issue in the suppression court or on appeal and have not preserved it for our review (*see, People v Smith,* 55 NY2d 888; *People v Gonzalez,* 55 NY2d 887; *see also, Matter of Pessano,* 269 App Div 337, 341, *affd* 296 NY 564; *Matter of Van Wormer v Leversee,* 87 AD2d 942). This failure, in my view, was not due to an oversight or negligence, but rather was the product of a calculated prosecution strategy. At the suppression hearing, the People were faced with a dilemma. If they pressed the argument that defendant had no reasonable expectation of privacy in Diana Schofield's apartment, they might have undermined their theory at trial that defendant's guilt was based on constructive possession of the explosives (*see,* Penal Law § 10.00 [8]; *cf. People v Watson,* 56 NY2d 632). In any event, I agree with the majority that the issue of standing need not detain us.

Also, we need not address the issue of whether the warrant involved in this case was properly issued under the so-called "objective good faith exception" to the exclusionary rule recently espoused in *United States v Leon* (468 US __, 104 S Ct 3405) or the "totality of circumstances" test formulated in *Illinois v Gates* (462 US 213). As this court has observed recently, there is no indication that these tests apply in New York (*see, People v Bigelow,* 105 AD2d 1110).

We are properly committed to accept some, but not all, hearsay to establish probable cause (*see, Jones v United States,* 362 US 257). The key consideration is whether there is a "substantial basis" for crediting the hearsay statement (*People v Hanlon,* 36 NY2d 549, 557). The search warrant here was issued solely upon the information contained in the affidavits of Mr. Pealo and Officer McCory. The officer's affidavit contained nothing but hearsay information since it came to him from Mr. Pealo's recitation of what Diana Schofield told Pealo. Whether this information was sufficient to meet the probable cause requirement of the 4th Amendment must be determined under the two-prong test formulated by the Supreme Court in *Aguilar v Texas* (378 US 108).

Defendant does not claim that the first prong, i.e., the reliability of the informant, was not met. As a private citizen (opposed to a paid government informant), Mr. Pealo's sworn statement

was entitled to some weight (*see, People v Hicks,* 38 NY2d 90, 94). Unlike the informant in *Hicks,* however, Mr. Pealo related information, not about criminal activity that he personally observed, but information Diana Schofield told him. Since the application in support of the search warrant did not contain an affidavit from Ms. Schofield, defendant contends that the second prong of the *Aguilar* test, i.e., the basis to ascertain the reliability of Ms. Schofield's information, was not met. I agree.

The essence of the "basis of knowledge" test is that an informant must not merely pass on his conclusion, let alone the conclusion of someone else, but must furnish the raw data of his senses so that the reviewing magistrate can draw his own conclusions. The "basis of knowledge" prong assumes an informant's veracity and proceeds to probe and test his conclusion. What precisely did the informant see, or hear, or smell, or touch first hand? If he heard facts from someone else, what makes that third person credible and how did that third person come by the knowledge? Here, neither Officer McCory nor Mr. Pealo made any personal observation that defendant was committing a crime (*see, People v Yedvobnik,* 48 NY2d 910). The sole basis for the warrant was that Ms. Schofield told Mr. Pealo that defendant was storing explosives in her apartment. Was there a "substantial basis" in the warrant application for the magistrate to conclude the information was reliable?

The suppression court believed there was "[b]ecause it was Schofield's apartment in which the dynamite was located, her statement to Pealo that Simon had dynamite in the apartment was a declaration against penal interest; she was thereby subject to a charge of criminal possession of a weapon" (*People v Simon,* 118 Misc 2d 745, 748). This conclusion is unwarranted. The mere statement that there is contraband on the premises by an occupant is insufficiently adverse to the occupant's penal interest to establish the reliability of the information. It is not possible to argue that since certain information, if true, would be trustworthy, therefore, it must be true. The possibility remains that the information might have been fabricated. This is why precedent requires that there be a substantial basis for crediting the accuracy of the observation related in the tip.

The People's reliance on *United States v Harris* (403 US 573), is misplaced. The rationale for allowing use of a hearsay declaration against penal interest is that a statement against the speaker's self-interest tends to indicate that its substance is accurate. This rationale evaporates when, as here, the statement is made not to a police officer, but to a citizen on the street,

and is made orally, thus insulating the declarant from prosecution for making a false statement (*see,* Penal Law §§ 210.35, 210.40, 210.45). *Harris* held only that "People do not lightly admit a crime and place critical evidence *in the hands of the police* in the form of their own admissions" (*United States v Harris, supra,* p 583; emphasis added; *see also, People v Brown,* 40 NY2d 183, 188). Thus, *Harris* should not be used to extend the assumption of reliability that accompanies an admission to a police officer to remarks made by an informant to a private citizen.

Also, the declaration against penal interest rationale is unpersuasive because the magistrate had no basis to ascertain whether Ms. Schofield in fact appreciated the legal nuances of the doctrine of constructive possession. Awareness of criminal liability is the key to reliability of this sort of hearsay (*see, People v Maerling,* 46 NY2d 289, 298). A lessor of an apartment is not automatically the possessor of all its contents. Proof that others have equal access to the area where the contraband is found may defeat a charge of constructive possession (*see, People v Schriber,* 34 AD2d 852). Here, since the alleged statement by Ms. Schofield was not made to a police officer, and the statement is not one which on its face demonstrates her awareness of possible participation in a crime, and since there was no corroborating evidence to support the hearsay statement, the second prong of the *Aguilar* test for finding probable cause has not been met.

There is always a serious danger inherent in double hearsay. The declarant upon whose reliability the affiant must depend is not interviewed. No information is available to the magistrate to facilitate an understanding of the possible motives behind the statement. There is no way for the magistrate to verify exactly how the declarant obtained the information. There is no opportunity to assess the credibility of the declarant. If the statement is against the declarant's penal interest, that may suffice to buttress credibility but it is not enough to support a finding of probable cause to search a private dwelling when no firsthand knowledge of any kind corroborates the hearsay (*see, People v Wright,* 37 NY2d 88, 91).

Of course, the fact that Ms. Schofield's information was subsequently validated by the search is beside the point. Probable cause questions are frozen in time and analyzed from the perspective of the issuing magistrate. Here, there was nothing in the affidavits before the magistrate to indicate how Ms. Schofield knew that what was contained in the "two cases" was in

fact dynamite. Were the cases open or closed? Was she familiar with what dynamite looks like? Did she actually see the explosives or was she informed by yet another party? Moreover, there was no particular reason to credit Ms. Schofield's information (*cf. People v Munger,* 24 NY2d 445, 451-452). She had no special relationship with the police for which she would be answerable if she lied. Also, the fact that she was known to be defendant's girlfriend accentuated the possibility that her "guile, gregariousness or gullibility may cause [her] to pass on unreliable or even deliberately false information" (*People v Elwell,* 50 NY2d 231, 237). The information was not so detailed to set it apart from the category of rumor (*see, Spinelli v United States,* 393 US 410; *cf. Draper v United States,* 358 US 307). On the contrary, her information was sparse and uncorroborated.

In the four hours that elapsed between the time Officer McCory received the information from Mr. Pealo and the time he went before the magistrate to obtain the search warrant, the officer did nothing more than check the criminal records of the defendant and Ms. Schofield. The reputation of a defendant or an informant, however, cannot elevate to the level of probable cause the information upon which the warrant was based (*see, People v Elwell,* 50 NY2d 231, 238, *supra; People v Wirchansky,* 41 NY2d 130, 133). The fact remains that the People have not explained their failure to corroborate what Mr. Pealo told Officer McCory that Ms. Schofield told Pealo. No effort was made to verify with Ms. Schofield the information Mr. Pealo allegedly received from her. Had the police done so, they would have discovered that Officer McCory was mistaken when he recited that the defendant was a "resident" of Schofield's apartment and that a record check was made on "Richard" Simon. Moreover, no effort was made to secure an affidavit from Ms. Schofield to supplement the application in support of the warrant. "[I]t seems * * * that if it may be so easily inferred from the affidavit [of the police officer] that the informant has [herself] observed the facts or has them from an actor in the event, no possible harm could come from requiring a statement to that effect, thereby removing the difficult and recurring questions which arise in such situations" (*Spinelli v United States,* 393 US 410, 426, *supra* [White, J., concurring]). As a result of these failures to corroborate Ms. Schofield's information, the magistrate had no basis to ascertain whether Schofield's conclusory statement was anything more than mere speculation or casual rumor (*People v Elwell,* 50 NY2d 231, *supra; cf. People v Hanlon,* 36 NY2d 549, 558, *supra*).

We should not countenance the issuance of a search warrant by a magistrate upon no more evidence than that presented here. A person who has not been shown to possess any of the common attributes of credibility and whose information has not been corroborated is precisely the sort of informant whose tip should not be the *sole* basis for the issuance of the warrant if the constitutional command that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation" is to be respected. We ought to require a more professional performance by police officers than the majority has required here. Despite their surface appeal, the affidavits in this case cannot be sustained without cutting deeply into the core of the 4th Amendment (*see, People v Hendricks,* 25 NY2d 129; *People v Mercado,* 45 AD2d 699). Accordingly, the judgment of conviction should be reversed and the indictment dismissed.

DENMAN, BOOMER and O'DONNELL, JJ., concur with DILLON, P. J.; GREEN, J., concurs in the result in a separate opinion.

Judgment reversed, on the law and facts, and indictment dismissed.