THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEROY WATSON, Appellant.

First Department, July 25, 1985

### APPEARANCES OF COUNSEL

*Irwin B. Brownstein* of counsel (*Bennett M. Epstein* with him on the brief; *Jacob D. Fuchsberg Law Firm,* attorneys), for appellant.

*Bruce Allen* of counsel (*Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

KASSAL, J.

On July 22, 1983, two police officers arrested defendant for the 1981 murder of Tyrone Nickens. An inventory search of his vehicle, conducted when defendant was in custody, disclosed a loaded .38 caliber revolver under the front seat cover of the vehicle. On advice of the Assistant District Attorney, defendant was never formally charged with homicide and was never indicted for that crime. He was, however, indicted for criminal possession of a weapon in the third degree and pleaded guilty after denial of his motion to suppress the gun and certain statements made while in custody at the station house.

The arrest was made based upon information which had been furnished to the police by an unidentified informant (witness 1), who, in July 1983, had offered to cooperate to avoid incarceration for his failure to appear in a pending narcotics prosecution. Another unidentified informant (witness 2) had previously advised Detective Donovan, one of the arresting officers, that witness 1 had "pointed out" defendant as having committed the Nickens' murder, which occurred two years earlier, on March 3, 1981. Witness 2, who was not present when the 1981 crime was committed, told the officer that defendant was now driving a Datsun 280 ZX and furnished the license number.

Witness 1 reported to Donovan that, on March 3, 1981, at about 3:15 A.M., he was present at 118th Street, between Eighth and St. Nicholas Avenues, and observed Nickens cross the street and walk toward a male, known to him as "Leroy", who was sitting in a grey or green BMW. He heard a number of shots, turned and saw the BMW leave the scene, with Nickens lying dead on the street. Witness 1 did not actually see the shooting, was not looking in Nickens' direction at the time and did not observe a gun in "Leroy's" hand. He described "Leroy" as a short, stocky male, black, about 30 years of age, who was now driving a Datsun 280 ZX and who could usually be found at the Kings Project, watching basketball games. The description fit the defendant "very well". However, it is conceded that, at no time, did the police officers attempt to corroborate the information provided to them by witness 1.

After receipt of the information, Donovan checked the police files, which, it is alleged, showed that in April 1981, another unnamed confidential informant had reported that a man named "Leroy" was involved in the murder; however, a different informant had implicated a man named "Leachi", who drove a 1981 grey BMW, with a license plate not in the defendant's name.

On July 22, 1983, at about 6:30 P.M., the officers spotted defendant in a Datsun 280 ZX, less than a block from the basketball courts at the Kings Project. They followed him and, at 110th Street and Seventh Avenue, directed him to pull over, placed him under arrest and, after frisking him, took him into custody in handcuffs. In response to an inquiry as to whether he wished any property from his vehicle, defendant replied that he wanted his briefcase, which was retrieved by Officer O'Hara from the rear compartment of the car. Defendant was also asked whether he wanted to declare any other property in his car, such as guns, narcotics or money, and he responded in the negative. At that time, he had not received *Miranda* warnings.

Defendant was taken to the 28th Precinct and was placed in an interrogation room. He denied having known the decedent, Nickens, following which full *Miranda* warnings were given and, in response, he stated that he did not wish to answer any questions. At this point, O'Hara, who had conducted an inventory search of the vehicle, entered the room, pulled a .38 caliber revolver from his waistband and proclaimed, according to Watson, "Look what I found in the car" or, according to Donovan, "I found this in the car," referring to the weapon, which was discovered under a sheepskin seat cover on the front seat. Defendant responded "I'm sorry I didn't tell you about that" and then admitted that he carried the gun for protection since he frequently carried rents which he collected from buildings.

Trial Term suppressed the statements made before *Miranda* warnings had been issued, but concluded that the police did have probable cause to arrest defendant and that the gun had been recovered pursuant to a proper inventory search. It also denied so much of the motion as sought to suppress the admission made after the *Miranda* warnings concerning possession of the gun, concluding that the statement was made spontaneously and was not "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant" (*People v Lynes,* 49 NY2d 286, 295; *People v Ferro,* 63 NY2d 316). The propriety of the inventory search was sustained under *South Dakota v Opperman* (428 US 364; *see also, People v Roman,* 53 NY2d 39), taking into account (1) the police did complete the standard department form voucher, listing what was found in the vehicle, and (2) the inventory search continued even after the weapon had been discovered. Thus, the court rejected defendant's claim that the inventory search was used merely as an excuse to gather evidence.

On this record, we agree that probable cause did not exist for the arrest. Under the two-pronged *Aguilar-Spinelli* (*Aguilar v Texas,* 378 US 108; *Spinelli v United States,* 393 US 410) standard, to sustain a warrantless arrest it must be shown that the information from the informant was reliable and that the police informant was credible. We find the first prong to be sufficiently established on this record in view of the fact that the information furnished to the police by witness 1 was based upon his personal observations at the time, standing but 30 feet from the commission of the homicide.

However, the record does not sufficiently establish the requisite second prong, namely, the reliability of the informant, so as to find probable cause for the arrest. As the Court of Appeals

observed in *People v Elwell* (50 NY2d 231, 237), the reliability of an informant may be established "by the arresting, or warrant-seeking, officer attesting to past instances of reliability or by the personal observation by the police of sufficient details corroborative of the informant's data to indicate that he knew whereof he spoke." (*See also, People v Hicks,* 38 NY2d 90, 93; *People v West,* 44 NY2d 656.)

As applied here, it is conceded that the police did not attempt to independently corroborate any of the information furnished by witness 1, who had not previously acted as an informant in supplying the police with accurate information, relevant criteria in terms of the informant's reliability. Moreover, what was imparted to the police here was not a spontaneous report with respect to the commission of a current crime but instead, pertained to uncorroborated events which had occurred two years earlier. (*Compare, People v Pacifico,* 95 AD2d 215.) Moreover, the information was given, not by "sworn statements of private citizens, who report crime in an honest and forthright manner" (*People v Hicks, supra,* at p 94), but by one who faced a narcotics charge and sought to curry police favor and lenient treatment in relation to the fixing of bail.

We have examined the other contentions offered by appellant and find them lacking in merit.

Accordingly, the judgment, Supreme Court, New York County (John T. Leonforte, J., at suppression, plea and sentence), rendered July 11, 1984, convicting defendant of criminal possession of a weapon in the third degree and sentencing him to a term of 2 to 4 years, should be reversed, on the law, and the indictment dismissed.

SULLIVAN, J. P., CARRO, FEIN and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, rendered on July 11, 1984, unanimously reversed, on the law, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of a copy of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.