OPINION OF THE COURT
Dominic R. Massaro, J.
The question before the court is whether a statement unsupported by oath, but with notice of falsity punishable by statute, is the equivalent of a formal oath. The court finds in the affirmative.
The defendant herein, Raymond Calderon, was charged with forgery in the second degree (Penal Law § 170.10), criminal *316 possession of a forged instrument in the second degree (Penal Law § 170.25), criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [2]), criminal impersonation in the second degree (Penal Law § 190.25 [1]), and petit larceny (Penal Law § 155.25). These charges arose out of the defendant’s use of a stolen credit card to purchase merchandise at Sears Department Store.
When the case was presented to the Grand Jury, the People called only one witness, Albert Roger Jones, assistant security supervisor at Sears, who testified regarding the facts and circumstances leading up to the defendant’s arrest.
In addition, the People introduced into evidence before the Grand Jury the supporting deposition of Michael Coletti, the owner of the credit card. The document stated: "This is a Supporting Deposition, People of the State of New York versus Raymond Calderon. I, Michael Coletti, of Westchester, New York, being duly sworn, depose and say that on March 26, 1987, I was the owner of the following described property: Sears credit card, number 6481003743248, that the defendant did not have any right to possession of said property superior or equal to mine.”
The bottom right hand corner of the supporting deposition was inscribed: "False statements made herein aré punishable as a Class A misdemeanor pursuant to section 210.45 of the Penal Law.”
Underneath this statement was the signature of Michael Coletti.
Upon the trial of this action, the supporting deposition was turned over to defense counsel pursuant to People v Rosario (9 NY2d 286 [1961]). Defense counsel thereupon moved to dismiss the indictment, contending that the supporting deposition presented to the Grand Jury fails to satisfy the oath requirement of CPL 190.30 (3) because it was not notarized.
OATH AND AFFIRMATION
The purpose of an oath is to secure truth. "In its broadest sense, an oath is any form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully” (58 Am Jur 2d, Oath and Affirmation, § 1). Traditionally, its function was to purge the conscience and impress upon the witness a due sense of religious obligation, so as to secure the truth of his testimony under the influence of its sanctity (see, O’Reilly v People, 86 NY 154 [1881]). Then, as *317 now, false testimony or statements under an oath authorized by law subjected one to punishment for perjury (Penal Law § 210.45).
While the substance of an oath no longer has root in religious belief, but rather in the solemn nature of its obligations, it is usually taken upon the Gospels and/or by swearing with uplifted hand. Persons whose conscience will not permit a swearing are allowed to declare or affirm (Reilly v People, supra; see, NY Const, art I, § 3). Indeed, the required form has grown elastic, today accommodating itself to different creeds and beliefs; and it is now provided by statute that "[a]n oath * * * shall be administered in a form calculated to awaken the conscience and impress the mind of the person taking it in accordance with his religious or ethical beliefs” (CPLR 2309 [b]).
The difference between an affidavit and an oath is that while the latter is a solemn pledge, the former consists of a statement of fact duly sworn to as the truth (58 Am Jur 2d, Oath and Affirmation, § 3).
Contrasting "[a]n affirmation is a solemn * * * assertion that an affidavit is true” (67 CJS, Oaths and Affirmations, § 2). An affirmation is the functional equivalent of an oath and may freely be substituted therefor (see, Penal Law §210.00 [1]).
"Historical Antecedents of the Modern Oath
"The accustomed Anglo-Saxon modes of trial were variations of two, oaths and ordeals, and judgment in the communal courts consisted merely in awarding to a party or condemning him to the mode of trial to be pursued. The trial itself was not a rational investigation of the facts involved but rather an appeal to the supernatural, the theory being that God would intervene with a miracle to show the right. 'In disputes about property and contract, the party to whom the trial or test had been awarded * * * could in most cases settle the matter by his oath, not by way of testifying to the facts, but by repeating a set form of words setting out his whole claim or defense. Usually the oath of a defendant had to be supported by the oaths of some designated number * * * who "with united hand and voice” sworn together as "oath-helpers” that his oath was "clean and without falsehood.” The efficacy of these oaths lay, not in the substance of what was said, but the oath itself, the solemn assertion "before God and *318 his saints,” provoking the wrath of Heaven if the oath were false. If any slip was made in pronouncing the proper words, or if a sufficient number of helpers was not present, the oath "burst”; it was regarded as the judgment of God, and the party lost his case and was punished for his false claim or defense.’ Such modes of trial continued to be used for centuries after the Norman Conquest, trial with oath-helpers then being called 'compurgation’ or 'wager of law’ ” (Smith, Handbook of Elementary Law, at 415 [McGray 2d ed 1939]).
CONCLUSIONS OF LAW
CPL 190.30 (3) provides that:
"A written or oral statement, under oath, by a person attesting to one or more of the following matters may be received in such grand jury proceeding as evidence of the facts stated therein * * *
"(c) that person’s ownership * * * 0f * * * property, as defined in section 155.00 of the penal law * * * its value and the defendant’s lack of superior or equal right to possession thereof’.
In the instant case, the written statement of Mr. Coletti was not made under oath. However, the prosecutor contends that the form notice, immediately above the subscription line, warning that "false statements made herein are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law” is the functional equivalent of an oath.
Is, then, an unsworn statement such as the one described above sufficient to satisfy the requirements of CPL 190.30 (3)?
The statute "is designed to show the requirement of ownership or superior right to property” (People v Booker, 120 Misc 2d 884, 886 [Suffolk County Ct 1983]). The section was enacted pursuant to Laws of 1975 (ch 307).
The court in Booker (supra, at 886) examined the legislative Bill Jacket which accompanies chapter 307 and noted that "[i]n a memorandum from the Division of Criminal Justice Services, Executive Department, the bill is discussed as follows: 'This bill is directed at a troublesome problem that constantly recurs, particularly in our overburdened metropolitan criminal courts. It involves the evidence of victims of property crimes that needs to be introduced at preliminary hearings and at grand jury proceedings. Most often the problems arise with respect to burglaries, car thefts, lost or stolen credit cards and joy riding. In all of these crimes, among the *319 elements that must be established for a prima facie case, are the facts that the defendant did not have, as the case may be, permission to enter or remain in the burglarized premises; a description of the stolen property; the value of the property; the fact that the owner did not give the defendant permission to use the property, etc. Basically, the victim’s testimony in these cases at this juncture is perfunctory in nature.’ ”
By allowing sworn affidavits rather than requiring personal appearance before the Grand Jury by the property owner, section 190.30 (3) spares the crime victim the inconvenience and bother of repeated appearances in court merely to testify that he owned the property. Personal appearances consume much time and result in much expense, both for the court and the witness. Moreover, personal appearance seems unnecessary since there is rarely any question of credibility or any need for greater detail at the pretrial stage.
People v Schweain (122 Misc 2d 712 [Sup Ct, Bronx County 1983]) is the only reported case that this court is aware of to deal with the issue at bar. In Schweain (supra, at 713) the court rejected the prosecution’s contention that a " 'punishable [if] false * * * statement’ ” is equivalent as a matter of law to the oath required under subdivision (3) of CPL 190.30. Nonetheless, the court in Schweain (supra) denied, on other grounds, the defendant’s motion to dismiss.
In an unreported case (People v Goyette, Sup Ct, Bronx County, indictment No. 2278/86), the court denied a motion to dismiss, finding that an attestation such as the one in the instant case is legally sufficient to meet the requirements of subdivision (3) of CPL 190.30. Cited as authority was the case of People v Sullivan (56 NY2d 378 [1982]).
Sullivan (supra) was not a case concerning affidavits of ownership presented to a Grand Jury. Rather, it dealt with affidavits submitted to a Magistrate to establish probable cause for the issuance of a search warrant. In Sullivan (supra), a search warrant was issued on the basis of a statement which recited that cardboard boxes full of marihuana had been observed in the closet and living room of a defendant’s house and which, though unsworn, contained a form notice to the effect that any false statement was punishable as a class A misdemeanor. The defendants therein contended that the search warrant was statutorily and constitutionally defective in that it was issued on the basis of a statement which was unsupported by oath or affirmation.
*320 The Court of Appeals, in upholding the defendants’ convictions, found that the "form notice served as the procedural and functional equivalent of the more traditional type of oath or affirmation” (People v Sullivan, supra, at 383). Moreover, the court found that both the statute, CPL 690.35 (1), which requires that an application for a search warrant "be in writing” and "be made, subscribed and sworn to by a public servant”, and the State and Federal Constitutions (NY Const, art I, § 12; US Const 4th Amend), which provide that no warrant can be issued except upon probable cause "supported by oath or affirmation” were satisfied by the form notice. The court placed great reliance upon the fact that "a person signing a statement containing a form notice clearly is alerted to the very real and significant possibility of criminl prosecution should the information he provides prove to be false. * * * Indeed, the form notice may provide a greater practical assurance against intentional misstatements of fact than the more mechanical and oft times routine procedure of swearing before a notary” (People v Sullivan, supra, at 383-384; see also, People v Simon, 107 AD2d 196 [4th Dept 1985]; People v Brody, 107 AD2d 939 [3d Dept 1985]).
As with any hearsay evidence, admission should be denied unless there are adequate safeguards against the rendition of false information. In the instant case, such safeguards exist because the deposing witness, Mr. Coletti, could be prosecuted for giving false information (see, People v Brown, 40 NY2d 183 [1976]). Moreover, the form notice clearly alerted Mr. Coletti "to the very real and significant possibility of criminal prosecution should the information he provides prove to be false” (People v Sullivan, supra, at 383; see also, People v Hicks, 38 NY2d 90 [1975]).
In light of the above, the court finds the supporting deposition to be both admissible under subdivision (3) of CPL 190.30 and sufficient to sustain the instant indictment.