OPINION OF THE COURT
Donald P. DeRiggi, J.
A hearing was held on June 15, 1994.
Police Officer Michael Napoli of the Glen Cove Police Department was the only witness who testified at the hearing. The hearing included Mapp and Wade issues. I credit the testimony of Officer Napoli and find as follows:
On January 8, 1994, at about 8:30 p.m., Officer Napoli received a radio call while on patrol advising him that there was a disturbance at Sal’s Pizzeria at 201 Glen Street, Glen Cove, New York. He proceeded to the location and saw three to four people in white clothing along with another individual and they appeared to him to be in an agitated state. The officer approached the owner of the pizzeria, Mr. DiMaggio, someone who he was personally familiar with, and he asked what happened.
DiMaggio told Officer Napoli that the defendant took cheese from his pizzeria and put it into the bushes. DiMaggio said that a man sitting in a Long Island Railroad (hereinafter LIRR) truck saw everything. The defendant, a male, white, with a red hat, mustache, blue jeans, brown boots and green jacket was still at the scene. Officer Napoli had known defendant for approximately 10 years prior to the date of incident.
Officer Napoli handcuffed the defendant and placed him in the rear of his police vehicle. Officer Napoli then drove the defendant from where they had been situated in the shopping center to another location in the shopping center at which the LIRR truck was parked. Buffa exited the LIRR truck and Officer Napoli exited his police vehicle.
Buffa and Officer Napoli spoke while the defendant re *932 mained in the police car about 25 feet away. Buffa told Officer Napoli that he witnessed the whole incident several minutes before from his LIRE truck which was parked near the pizzeria. Buffa said he saw two people walking from the pizzeria with boxes of cheese in their hands and place them in the bushes at the southwest corner of the shopping center and then return to the pizzeria to repeat the same actions. Buffa described the perpetrators to Officer Napoli and indicated that one of them was wearing a red hat, had a mustache, blue jeans and a green jacket. Officer Napoli then asked Buffa to look into the rear of the police car and tell him what he saw. Buffa walked over to the police car, looked in, and told Officer Napoli that the defendant was one of the people who took the cheese. This identification occurred within five minutes of defendant’s arrest.
Four boxes of cheese where recovered from the location where DiMaggio and Buffa had said they had been deposited.
CONCLUSIONS OF LAW
The court has considered the evidence presented at the hearing, the oral arguments of, and pleadings submitted by counsel, and rules as follows:

Custody

Notwithstanding the People’s argument to the contrary, when defendant was patted down, handcuffed, placed in the back of the police car and driven to another area of the shopping center, he was under arrest. (People v Brnja, 50 NY2d 366, 372 [1980].)

Probable Cause

The next logical inquiry centers on whether the arrest was supported by probable cause. The existence of probable cause to arrest requires information which would lead a reasonable person who possesses the same expertise as the arresting officer to conclude, under the circumstances, that a crime is being or was committed. (People v McRay, 51 NY2d 594, 602 [1980].) In People v Parris (83 NY2d 342 [1994]), the Court of Appeals made clear that hearsay, and even hearsay-upon-hearsay, is an acceptable source for probable cause, so long as both levels of the two-pronged Aguillar-Spinelli test are satisfied. The People must demonstrate adequate (1) reliability, and (2) basis of knowledge, of the source of the information. *933 Even where probable cause is based upon " long chains of hearsay * * * the issue is not the length of the chain but rather whether both prongs of the * * * test are met at each level’ ” (People v Parris, 83 NY2d, at 347, supra).
With respect to the reliability prong, it is well established that police officers have a right to rely upon information furnished by private citizens who report crimes that they have witnessed or that were perpetrated against them. (People v Brnja, 50 NY2d 366 [1980], supra; People v Hicks, 38 NY2d 90 [1975]; People v Grams, 166 AD2d 717 [2d Dept 1990]; People v Cunningham, 135 AD2d 725 [2d Dept 1987].) The defense concedes, and this court finds, that DiMaggio, the owner of the pizzeria, a named citizen, known to the arresting officer, was sufficiently reliable to support the first prong of the Aguillar-Spinelli test.
On the issue of basis of knowledge, defendant, relying upon Parris (supra), argues that because the information provided by DiMaggio was not firsthand, but gleaned from Bufia, the LIRE truck driver, there was insufficient probable cause to support the arrest. The court does not agree.
In Parris (supra), the Court found the basis of knowledge prong to be infirm, but not because it was based on hearsay. The Court was troubled by the fact that the arresting officers had no indication whatsoever that the source of the information had a sufficient basis of knowledge. The designation of the source as an "eyewitness” by one of the officers in the chain was not sufficient. Neither was the fact that the source provided a description of the defendant. This is plainly inapposite to the facts elicited in this hearing, where the owner of the pizzeria was able to point to another named citizen, in the immediate area, at a time proximate to the incident, and state categorically that the named citizen’s basis of knowledge was that he saw the theft take place moments before. Thus, the officer had both reliability, as well as an indication of the basis of the informant’s knowledge. Accordingly, because the arrest was based on probable cause, the showup need not be suppressed as the product of an illegal arrest.
Admissibility of the showup in this case is not dependent on whether Officer Napoli’s initial decision to arrest defendant was adequately supported by probable cause. Even if it were conceded, arguendo, that the arrest was not sufficiently supported, suppression is not required. When Bufia told Officer Napoli that he saw the entire crime from his LIRE truck *934 moments before, and provided a detailed description of the perpetrator which matched the defendant, it constituted an "intervening event which was of such significance that it broke any causal connection between the illegal arrest and the otherwise admissible showup identification.” (People v Johnson, 102 AD2d 616, 627 [4th Dept 1984].) If the officer did not have probable cause before speaking with Bufia, he clearly had it after speaking with him. Thus, even if the initial arrest was illegal, any illegality did not taint the identification procedure.

Suggestiveness

Showup identifications made shortly after a crime are permitted by the courts because "based on fresh recollections of recent events, they insure reliable identifications of perpetrators and the prompt release of innocent suspects.” (People v Soto, 87 AD2d 618 [2d Dept 1982].) The admission of "promptly conducted at-the-scene showups rests on [the courts’] objective that the police have reasonable assurances that they have arrested or detained the right person.” (People v Duuvon, 77 NY2d 541, 545 [1991].) The showup in this case took place within minutes of the alleged crime, and defendant’s arrest, at the same shopping center. Likewise, the fact that the defendant was handcuffed, in the rear of the police car, does not in and of itself render the procedure infirm. (People v Duuvon, 77 NY2d 541 [1991], supra [showup identification conducted while defendant handcuffed, in rear of police car].) The law recognizes that "procedures that are less than ideal may * * * be tolerable in the interest of prompt identification.” (People v Love, 57 NY2d 1023, 1024 [1982]; People v Johnson, 102 AD2d 616 [4th Dept 1984], supra.)
Accordingly, defendant’s motion to suppress the showup identification in this case is denied in all respects.