■ The People of the State of New York, Respondent, v James Shephard, Appellant.—Judgment, Supreme Court, New York County, rendered on June 27, 1979, convicting defendant of attempted criminal possession of a controlled substance in the sixth degree, and sentencing him to one and one-half to three years, reversed, on the law, the facts and in the

exercise of discretion in the interests of justice, the plea and sentence vacated and the matter remanded for new suppression hearing. Defendant-appellant entered a plea of guilty after the denial of his motion to suppress physical evidence, including an alleged methadone bottle which was never introduced into evidence or produced at the hearing, notwithstanding that it was continually referred to in testimony, was requested by defense counsel during the hearing and was relied on by the court for its finding of probable cause. The appellant and the arresting officer were the only witnesses at the hearing and testified in direct contradiction to each other. Even accepting the officer's testimony in the light most favorable to the People, as did the hearing court, we find substantial questions remaining as to the existence of probable cause, which should be clarified by giving opportunity to defense counsel to cross-examine the officer with the benefit of said methadone bottle, which was the basis of the probable cause holding, and also with the arresting officer's memo book, the arrest report and the incident report, which were similarly not produced at the hearing. Concur—Sandler, J. P., Sullivan, Markewich and Carro, JJ.

Lupiano, J., dissents in a memorandum as follows: At the suppression hearing, the sole witness for the prosecution, a New York City Housing Officer, testified that on February 13, 1978, shortly after 7:00 P.M., he saw the defendant standing 10 to 15 feet away near the corner of 127th Street and Eighth Avenue. The area was illuminated by a street lamp. The officer recognized defendant as an individual he knew by the nickname "Shep" from prior encounters. From his vantage point, the officer observed defendant, who was standing alone near a group of people, holding in his hand a plastic semiclear oblong bottle with a white cap which measured approximately one and one-half to two inches in height and three-quarters inch in diameter. Approaching to within four to five feet of defendant, the officer perceived the bottle held by defendant at waist height to contain an orange colored liquid. Since the bottle was of the general type which contained methadone, the officer determined to initiate an inquiry of defendant as to the nature of the contents of the bottle and defendant's right to possess same. The label on the bottle was devoid of any identification of the party entitled to possess such bottle as would be required if the bottle contained methadone. Accordingly, the officer initiated an inquiry of defendant as to whether it was defendant's bottle, and, having observed the absence of the patient's name from the label, whether defendant was in a methadone program and where the bottle came from. It was in consequence of this questioning and the apparent lack of satisfactory response thereto indicating a possible violation that the officer asked defendant to accompany him to the squad room. While walking to the squad room, the officer continued his interrogation, and after entering the squad room elicited defendant's admission that he had just purchased the methadone bottle and that it did not belong to him. At that time the defendant was formally arrested and given *Miranda* warnings. A subsequent strip search disclosed a paper bag under his right armpit containing two bundles, each consisting of 25 glassine envelopes containing heroin. Defendant, testifying at the suppression hearing, stated that he did have the full bottle of methadone, but that it was in his left pocket and he was not holding same. He declared that the methadone was given to him as a gift by a third party, a friend of his, whose name he did not know. Defendant admitted that he is not registered in any methadone program or clinic. He denied possessing the heroin. The hearing court found the officer's testimony to be credible and in its decision and order, dated March 13, 1979, denying defendant's motion to suppress the

physical evidence, declared that "The credibility of the defendant, especially in view of his previous record for possession of narcotics, was not sufficient to outweigh or affect the credibility the court attaches to the testimony of [the] Police Officer * * * [who] was lawfully required to inquire concerning the unmarked methadone bottle and to arrest the defendant when no proper explanation was forthcoming for possession of the same." To evaluate the reasonableness of the police conduct herein "we must consider whether or not it was justified in its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible (People v Cantor, 36 NY2d 106, 111)" (People v De Bour, 40 NY2d 210, 222). It is not contended by defendant that it was physically impossible for the officer to see the bottle above described from a distance of 10 to 15 feet away. Not only is such observation not incredible as a matter of law, the majority herein, on this record, have not found such testimony to be incredible or to strain credulity (cf. People v Alexander, 37 NY2d 202, 203). The officer approached not to effect an arrest, but to initiate an inquiry based on what he had theretofore observed. The record contains no testimony regarding the defendant's responses to the officer's questions. However, there is testimony that the officer's continued observation of the bottle after initiating inquiry, permitted him to notice that some of the information which was required to be on the orange label, i.e., the name of the person for whom the drug was prescribed, was missing.[1] The court below found that the officer observed that the bottle was "unmarked". The parties stipulated that the bottle submitted to this court for inspection upon the oral argument of this appeal before this court was the bottle seized from the defendant herein. Such observation by this court discloses that the People are correct in their contention that part of the distinctive orange label was affixed to the bottle which the officer recognized as the type commonly used to contain methadone. Thus, the officer's observations, coupled with defendant's failure to explain his possession, gave rise to probable cause for the station house detention of the defendant. The officer then reasonably believed that defendant possessed methadone and that the bottle did not list defendant as the proper possessor. Moreover, defendant failed to produce a methadone card when asked to do so. The officer made inquiries and examined the bottle close up before making the arrest, not after. Defendant's argument that his version of the incident is inherently more credible than the officer's is not supported by the record and was properly rejected by the finder of fact and law (the hearing court). Defendant claims that he was in a dark area of a condemned building in the company of many other persons and that the officer pulled him out of the group for no apparent reason. Defendant's argument that he would have to be a "moron" to remain in the presence of a uniformed officer with contraband in plain view in his hand is not self-evident and apart from any consideration of defendant's intellectual capacity, such argument overlooks the reasonable possibility that defendant may simply not have noticed the officer's presence and subsequent approach. No elucidation is given by the majority as to the nature of the "substantial questions remaining as to the existence of probable cause" which require clarification. Simply put, the majority have opted to give the defendant a "second bite of the apple" because of some subjective, vague, unformed disquietude as to the credibility of the officer.

---

1. Pursuant to section 3331 of the Public Health Law, a bottle containing methadone must have an orange label affixed to it, containing the name and address of the user, as well as other pertinent information.

The hearing court *observed* the demeanor of the officer and the defendant when they testified at the suppression hearing. The claims of the People and the defendant were fairly presented to the hearing court with force and ability. Clearly, the hearing court considered the case with care. Under such circumstances, the hearing court is in a better position to pass upon the issue of credibility than is this court which reviews but the printed record (see *People v Cohen,* 223 NY 406, 422-423). The issue of credibility was primarily for the hearing court and its determination is entitled to great weight (see *People v Atlas,* 183 App Div 595, 600, affd 230 NY 629). The officer's testimony is not incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory (cf. *People v Garafolo,* 44 AD2d 86). We are not required to discard reason and common sense in evaluating the record herein on the issue of credibility. Patently, the observation herein "viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training" gave rise to the requisite predicate of probable cause to believe that the defendant illegally possessed methadone *(United States v Davis,* 458 F2d 819, 821).[2] Accordingly, the judgment convicting defendant, upon his plea of guilty, of attempted criminal possession of a controlled substance in the sixth degree should be affirmed.