THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CARLOS CRUZ, Also Known as CARLOS J. CRUZ, Appellant.

First Department, August 24, 1989

152

APPEARANCES OF COUNSEL

*David P. Greenberg* of counsel *(Abigail Everett* with him on the brief; *Philip L. Weinstein,* attorney), for appellant.

*Jonathan R. Walsh* of counsel *(Billie Manning* with him on the brief; *Robert T. Johnson, District Attorney,* attorney), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

At issue is the legality of a warrantless search and seizure which followed a forcible police entry into an apartment

occupied by defendant, whose motion to suppress guns and drugs seized as a result of that entry was denied. After an evidentiary hearing, the court found that probable cause existed, justifying the entry, and that exigent circumstances excused the police officers' failure to obtain a warrant. Defendant thereafter pleaded guilty to attempted criminal possession of a controlled substance in the first degree in satisfaction of the charges arising out of the seizure in the apartment, as well as criminal possession of a controlled substance in the fourth degree under another indictment involving a separate and distinct occurrence. He does not challenge the validity of his conviction under the latter indictment.

The People presented the only evidence at the suppression hearing. On June 15, 1984, at approximately 2:30 A.M., Police Officers Schulmerich and Cordero responded to a radio run of a robbery in progress at 1652 Popham Avenue. The officers were further informed that three male Hispanics with shotguns were seen entering a green station wagon. At the scene, the two officers were joined by Sergeant Bohleke and all three officers heard a woman yelling from a second-story window that she had been robbed. A man standing on the sidewalk below, later identified as the woman's common-law husband, told the officers that 3 or 4 male Hispanics had robbed his wife. After speaking to the victim and securing an identification, the officers made an arrest at the scene of an individual who was holding a sawed-off shotgun. No other suspects were ever apprehended. The suspect was then brought to the 46th Precinct for booking.

Later that night, while at the station house processing the arrest, Officer Schulmerich telephoned the complainant to request her presence in court the following morning. The complainant's husband answered and told Schulmerich that "the other two perpetrators * * * were inside apartment 5-A" in the same building. Sergeant Bohleke and five other officers, including Schulmerich and Cordero, immediately returned to the crime scene, arriving at apartment 5-A at approximately 4:30 A.M. They had neither an arrest nor a search warrant. Sergeant Bohleke put his ear to the door and heard noises, but he could not determine "if it was a radio or T.V. or what". The sergeant then knocked on the door and announced, "This is the police." When no response was forthcoming, he "ordered the door knocked down."

After kicking down the door, the officers rushed inside. Sergeant Bohleke directed his flashlight into a nearby bed-

room and observed a man, later identified as Jose Garcia, a codefendant, lying in bed, with a shotgun on the floor to his right. When Sergeant Bohleke attempted to kick the shotgun away, out of his reach, Garcia awoke and grabbed for the sergeant's revolver. As the two struggled, Officers Cordero and Schulmerich rushed to the sergeant's aid and together they subdued Garcia, handcuffing him. When Cordero lifted the mattress, a .357 magnum fell to the floor.

While Bohleke, Cordero and Schulmerich were in the front bedroom, Officer DiGiovanni and the other two officers proceeded to the back of the apartment. There, in a darkened bedroom, they found defendant and two women, wearing street apparel, lying on a box spring and mattress covered by a blanket and sheet. DiGiovanni pulled back the covers; next to defendant lay a loaded and cocked shotgun and, jutting out slightly from beneath his pillow, a loaded .22 caliber pistol. The officers lifted the mattress and found a tin can, which contained a bag of cocaine. After defendant and the others were taken into custody, the officers searched the apartment. They recovered ammunition and a shotgun barrel, additional handguns from the front bedroom and $3,100, all in single denomination, from the back bedroom closet.

Finding the police officers' testimony to be credible, the hearing court held that the officers, based upon Schulmerich's telephone conversation with the complainant's common-law husband, a resident of the building, whom they had previously met at the crime scene, had probable cause to make a nonconsensual entry into apartment 5-A to make an arrest. The court further held that although the officers did not have a warrant to enter the apartment, exigent circumstances made time of the essence and justified the entry, including breaking down the door after they failed to hear a response to their knock and announcement. The court cited the timing of the notice as to the suspect's whereabouts and the likelihood of delay at that hour if a warrant were sought, and, given that the suspects were armed, the risk to the officers, if, while seeking a warrant, they secured the premises and the suspects attempted to escape.

Having found that probable cause existed to arrest defendant, and that exigent circumstances justified the officers' warrantless entry, the hearing court refused to suppress the weapons and drugs, which were either "within the officers' plain view, as they secured the suspects," or in and around the beds, which were properly searched as an incident to the

arrest. It did, however, grant defendant's motion with respect to the money and ammunition found in the subsequent search of the rooms and closets.

On the issue of standing, we note at the outset that the order directing a suppression hearing states that the People had "dropped" their "opposition based upon lack of standing". Nevertheless, at the conclusion of the suppression hearing, the prosecutor suggested, rather tentatively, that standing was still an open question since, in her "own mind", she believed that she was still free to raise a standing objection if insufficient evidence were adduced on that point. Our reading of the record differs and we find that the People unequivocally "withdrew" their objection on the standing issue and agreed to accept the court's ruling at the end of the hearing. Such concession is binding on the People, obviating the need for defendant to prove standing. *(See, People v White,* 73 NY2d 468, 475-476.) Since defendant bore the burden of proof on standing *(People v Rodriguez,* 69 NY2d 159), he had a right to rely on this concession and the court's unambiguous order on the standing issue. *(See, Martin v City of Cohoes,* 37 NY2d 162, 165-166; *see also, People v Malagon,* 50 NY2d 954, 956.)

In any event, the record reflects that, without challenge from the prosecutor, Officer Schulmerich testified that someone had ascertained who owned the apartment, and the officer, in fact, believed that defendant "owned the apartment, or was staying at the apartment". This testimony, in our view, was sufficient to establish that defendant had an adequate expectation of privacy to contest the warrantless police entry into the apartment. *(See, Rakas v Illinois,* 439 US 128, 152-153; *People v Lewis,* 94 AD2d 44, 51.)

A warrantless governmental intrusion into the privacy of a home is, with limited exceptions, prohibited by constitutional limitations. (NY Const, art I, § 12; US Const 4th, 14th Amends; *People v Gonzalez,* 39 NY2d 122, 127; *see, Silverman v United States,* 365 US 505, 511.) At a minimum, there must be probable cause to believe that the suspect sought therein has committed a felony. *(See, United States v Watson,* 423 US 411, 421.) In instances, where, as here, the police act without a warrant, courts generally exercise a "higher level" of scrutiny in reviewing a probable cause determination than in the case of a determination by a detached and neutral Magistrate. *(People v Bigelow,* 66 NY2d 417, 424, n; *see, Illinois v Gates,* 462 US 213, 236-237; *see also, People v Griminger,* 71 NY2d 635, 640.)

■ In the instant case, the People rely exclusively on the information obtained by Officer Schulmerich in his conversation with the victim's common-law husband to establish probable cause. As a matter of State constitutional law, New York continues to apply the *Aguilar-Spinelli* test for evaluating an informant's tip in assessing the existence of probable cause: "if probable cause is based on hearsay statements, the police must establish that the informant had some basis for the knowledge he transmitted to them and that he was reliable". *(People v Bigelow, supra,* 66 NY2d, at 423; *People v Johnson,* 66 NY2d 398, citing *Aguilar v Texas,* 378 US 108, 114; *Spinelli v United States,* 393 US 410.) With respect to the veracity prong of the *Aguilar-Spinelli* test, a citizen informant's credibility may be presumed. *(See, People v Hicks,* 38 NY2d 90, 92-93; *People v Cantre,* 95 AD2d 522, 526, *affd* 65 NY2d 790.)

The record, as it stands, does not present a basis to challenge the common-law husband's status as a reliable citizen informant, mainly because defendant, as he argues in another point on appeal, was essentially precluded from inquiring into the underlying incident that allegedly justified the police officers' actions. The citizen informant's personal credibility alone, however, is insufficient to demonstrate probable cause, as even an earnest citizen may unwittingly pass on baseless rumor or speculation to the police. Caution requires that police officers defer taking action on "an accusation based merely on an individual's general reputation." *(Spinelli v United States, supra,* 393 US, at 416.) Thus, a citizen's personal credibility does not satisfy the distinct basis-of-knowledge requirement of the *Aguilar-Spinelli* test. *(People v Vargas,* 143 AD2d 699; *People v Mullins,* 137 AD2d 227, 231 [even assuming that the police spoke to "concerned citizen witnesses", it was still necessary to satisfy the basis-of-knowledge prong of *Aguilar-Spinelli]; People v Brown,* 95 AD2d 569, 572.) When considering the tip of a citizen informant, a police officer must verify that the informant has a basis for the information he conveys. *(See, People v Seppinni,* 77 AD2d 852, *appeal dismissed* 54 NY2d 625 [even where informant gave his name to 911 operator and his veracity was confirmed by nonincriminating, on-the-scene police observations, additional reason to credit the source of the information still required].)

To be distinguished, of course, are those cases where the citizen informant is an "eyewitness-victim", since it is obvious that the informant's accusation is based on personal knowledge. *(See, People v Gonzalez,* 138 AD2d 622; *People v Walker,*

129 AD2d 751.) Here, however, the wife had been robbed. Thus, unlike the situation in *Gonzalez,* where an eyewitness-victim identified a specific individual as his assailant, the husband's belief that the perpetrators could be found in a particular apartment was, insofar as this record discloses, based, not on personal knowledge, but on secondhand information of unknown origin.

Similarly, although the Fourth Department, in *People v LeGrand* (142 AD2d 977), cited *Hicks* and *Cantre (supra)* for the proposition that the *Aguilar-Spinelli* test does not apply to "identifiable citizen" informants, it is clear from a reading of the case that there was ample evidence demonstrating that the citizen informant, a police officer, had firsthand information to support the defendant's arrest for gun possession. Furthermore, a reading of *Hicks* and *Cantre* reveals that, in both, the citizens' tips were, in fact, based on personal observation. Indeed, the Court of Appeals, in *Hicks,* emphasized that the Magistrate knew, in detail, how the citizen had come to know the proffered information *(supra,* 38 NY2d, at 93). In *Cantre,* as well, the Court of Appeals affirmed the Second Department's explicit application of traditional *Aguilar-Spinelli* analysis; its discussion of the citizen's inherent reliability related solely to the veracity aspect of the two-prong test. *(See also, People v Stephens,* 139 AD2d 412.) Hence, even with respect to known citizen informants, the People must demonstrate that the police, before undertaking any intrusive action, had a basis for accepting the citizen's information.

■ While Penal Law § 240.50, which imposes a criminal sanction on those who provide false information about a crime, is relevant as an additional reason to assume the reliability of a known informant, it is irrelevant in assessing whether the informant's tip is based in fact *(see, People v Hicks, supra,* 38 NY2d, at 94), since the statute requires proof that the informant "knowing[ly]" reported false or baseless information. Thus, the provision does not make criminal the good-faith transmission of rumor, which proves to be false, and cannot, therefore, serve to relieve the police of their obligation to ascertain the basis of the citizen's tip, or, if necessary, to conduct an independent investigation.

■ We thus believe that the hearing court erred in finding that Officer Shulmerich's conversation with the victim's husband provided probable cause. The officers had no assurance that the husband had a factual basis for his statement that his wife's assailants could be found in a particular apartment.

As acknowledged by Officer Schulmerich, the husband's tip was devoid of any detail: "He just said they were in there. If we wanted the other two people to the robbery, that's where they were." The husband provided no names, descriptions or other information to identify the suspects who, supposedly, were to be found in the apartment. The officer also conceded that he did not make any attempt to find out "where [the husband] obtained the information." Where, as here, the informant does not indicate the basis for his knowledge, a warrantless search or arrest will be sustained "only when the police observe conduct suggestive of, or directly involving, the [reported] criminal activity" or when the report is "so detailed as to make it clear that it must have been based on personal observation of that activity". *(People v Elwell,* 50 NY2d 231, 241; *see, People v Rodriguez,* 52 NY2d 483, 491-493.)

Nor did the officers undertake any independent investigation to corroborate the husband's tip. No one testified that they had learned anything from the man arrested earlier in the evening to direct their attention to the particular apartment. There was no evidence that they made any effort to confront the arrested man with the new information. Instead, immediately after speaking to the husband, and without any other information at their disposal, they proceeded to the apartment in question. Pausing only briefly to listen after knocking, and without any indication that the occupants, if any, had even heard their knock, they broke down the door. Inside, they found, not the robbery suspects, but evidence of a totally different crime.

■ Even if we were to find that probable cause existed for the police to believe that they would find the two robbery suspects in the apartment, they had no right to enter the apartment without a warrant. Under *Payton v New York* (445 US 573), police officers may not, absent exigent circumstances or consent, enter a suspect's home to make a warrantless arrest. "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *(Supra,* at 586.) The Supreme Court has emphasized that "exceptions to the warrant requirement are 'few in number and carefully delineated' " and, moreover, that "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *(Welsh v Wisconsin,* 466 US 740, 749-750, quoting *United States v United States Dist. Ct.,* 407 US 297, 318.) Indeed, in *Welsh,* the court emphasized that it had "recognized only a few such emer-

gency conditions" and hesitated to find exigent circumstances, "especially when warrantless arrests in the home are at issue". (466 US, at 750; *see also, United States v Cattouse,* 846 F2d 144, 146.)

To determine exigency, courts generally look to several factors, including: "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect 'is reasonably believed to be armed'; (3) 'a clear showing of probable cause . . . to believe that the suspect committed the crime'; (4) 'strong reason to believe that the suspect is in the premises being entered'; (5) 'a likelihood that the suspect will escape if not swiftly apprehended'; and (6) the peaceful circumstances of the entry." *(United States v Martinez-Gonzalez,* 686 F2d 93, 100, quoting *United States v Reed,* 572 F2d 412, 424, *cert denied sub nom. Goldsmith v United States,* 439 US 913; *Dorman v United States,* 435 F2d 385, 391; *see also, People v Mealer,* 57 NY2d 214; *People v Green,* 103 AD2d 362, 363-364.)

While the officers here were investigating an armed robbery, a serious offense, the gravity of the offense is but one factor, which "alone does not overcome the presumption of unreasonableness that attaches to a warrantless house arrest." *(United States v Cattouse,* 666 F Supp 480, 483, *affd* 846 F2d 144, *supra; see also, Welsh v Wisconsin, supra,* 466 US, at 752; *Mincey v Arizona,* 437 US 385, 394, n 8 [no homicide exception to warrant requirement].)

Application of the remaining factors to the uncontroverted facts only confirms that the People failed to satisfy their burden of establishing exigent circumstances. Initially, we note that this was a most intrusive entry, occurring not only in the middle of the night, but accomplished by six police officers knocking down a door. Since a nighttime entry more seriously intrudes on protected privacy interests than a daytime entry, the People face an even heavier burden in demonstrating the reasonableness of the police action than they would otherwise. *(See, United States v Campbell,* 581 F2d 22, 26, n 5.)* This burden is not made easier where, as in this case, the entry is forcible. Hearing no response to their knock after "a minute or less", the officers knocked the door down and entered a darkened apartment. As the court recognized in *United States v Gomez* (633 F2d 999, 1006, *cert denied* 450 US 994), there can be "no question" that kicking and banging on the door "typifies the very sort of forcible governmental intrusion against which the Fourth Amendment should

shield." There, the forcible entry, which occurred during the daytime, was justified only because the police could hear "commotion and flushing of the toilet", signaling the immediate destruction of evidence.

There is, however, no testimony about the destruction of evidence or the flight of suspects in this record. Since the People failed to offer any proof regarding what, if anything, had been taken during the earlier robbery or burglary—instead, vigorously opposing all efforts to elicit the details of the earlier crime—it is not possible for this court to determine whether there was any risk that evidence would be destroyed if the officers waited to obtain an arrest warrant. It would be sheer speculation to infer from this record that any stolen property, if still in the possession of the two suspects, was capable of quick disposal.

Nor was it likely that the two suspects inside the apartment were about to flee. Since the police had initially been told that the robbers had left the scene, their return to the apartment building would suggest that they felt relatively safe there. And, although the police had arrested one unnamed individual two hours earlier, the People did not offer any evidence about that arrest to suggest that the robbery suspects might fear that this individual would lead the police to them.

Furthermore, although the court found that it would take "several hours" to obtain a warrant, the People failed to offer any evidence to support such a conclusion. In fact, the prosecutor explicitly declined to advance this argument, conceding that "a judge is available" at 4:30 A.M., arguing instead, essentially, that any delay would have been unreasonable. The prosecutor's concession is hardly surprising as the police officers here involved had a number of options even at 4:30 A.M. They could have gone to the Criminal Court in Manhattan, where a Judge is available almost around the clock. (See, CPL 100.55 [2]; NY City Crim Ct Act § 30.) There is also provision for applications for search warrants by telephone. (CPL 690.36.) In light of these opportunities, the hearing court should not have held that it would have taken several hours to obtain a warrant, particularly in light of the People's explicit concession that a Judge was available. In any event, even if it would have taken several hours to obtain a warrant, the People did not otherwise meet their heavy burden of showing an immediate need to break down the door and enter the apartment at 4:30 A.M.

Turning finally to the remaining exigency factors, even if we were to agree that probable cause existed, it was, on this record, far from "clear"; similarly, the reason to believe that the suspects were in the apartment could hardly be described as "strong". *(See generally, People v Green, supra,* 103 AD2d, at 364.) By virtue of their inherent intrusiveness, warrantless entries must be based on more than a skeletal showing of probable cause. *(See, United States v Campbell, supra,* 581 F2d, at 26.) Before entering a house without a warrant, the police must be reasonably sure that they are going to find the perpetrator. In *Campbell,* the police had verified that the apprehended accomplice was providing accurate addresses and descriptions for his two named accomplices; only then did they make the warrantless arrests. *(Supra,* at 24, 26; *see also, People v Jones,* 134 AD2d 451 [exigency existed when the complainant's identification provided "ample" probable cause, the police were on the scene "within minutes" of the armed crime, and they knew from personal observations that the accused was actually in the apartment to be entered].)

The facts here differ significantly from those in *Warden v Hayden* (387 US 294, 297), one of the few cases where exigent circumstances have been found. In *Hayden,* two eyewitnesses saw the armed suspect run into a house just minutes before the police arrived on the scene. In contrast, since two hours had elapsed between the initial crime here and the report, fortuitously received, that two of the perpetrators were in the apartment, the officers had no way of knowing when the perpetrators returned and whether they were still there. Not surprisingly, they did not find the robbery suspects in the apartment. Far from being a "strong" reason to believe that the suspects were in the apartment, as found by the hearing court, the husband's tip provided a weak predicate for any police action.

We conclude that exigent circumstances did not justify the police officers' entry. Thus, defendant's motion to suppress the property found after the police entered the apartment should have been granted. Since defendant was charged solely with possessory crimes, based on the property illegally seized in the apartment, the indictment charging those crimes (No. 2598/84), should be dismissed. *(See, People v Kugler,* 122 AD2d 955.)

Defendant's only other appellate contention is that he was denied his due process right to a fair suppression hearing when the court prohibited him from inquiring into the earlier crime that allegedly served as the predicate for the police

entry, but for which he was never arrested. At the suppression hearing, the People, in justification of the warrantless entry, argued that the police investigation of a prior armed robbery provided both probable cause and exigent circumstances. Yet, when defendant's attorney sought to inquire about this factual predicate, the court repeatedly sustained the People's objection that "we're not trying the robbery case". The court even refused to allow defendant's attorney to ask where, exactly, this earlier robbery had taken place. Objecting on the same ground, the People also refused to turn over available notes of the testifying officer's conversation with the robbery victim's husband, even though this interview was the sole basis cited by the hearing court to establish probable cause. Inquiry into the police investigation of the prior robbery was also material to the issue of exigent circumstances.

■ A fair suppression hearing requires that a defendant be given an adequate opportunity to cross-examine the police officers and fully challenge the constitutionality of their actions. (*People v Robinson,* 118 AD2d 516, *judgment revd after remand* 125 AD2d 259; *see also, People v Shephard,* 77 AD2d 502.) In addition, the People are obliged to disclose at a suppression hearing any prior statements made by their witnesses relating to the subject matter of their testimony. (CPL 240.45; *People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866; *People v Geaslen,* 54 NY2d 510, 516.) Such extreme limitation on defendant's due process right to cross-examination as was herein imposed would, in any event, mandate a new suppression hearing were we not dismissing on other grounds.

Accordingly, the judgment of the Supreme Court, Bronx County (Joseph A. Mazur, J.), rendered January 16, 1986, convicting defendant of attempted possession of a controlled substance in the first degree under indictment No. 2598/84 and criminal possession of a controlled substance in the fourth degree under indictment No. 5103/85 and sentencing him to concurrent indeterminate terms of imprisonment of from 6 years to life and 1½ to 4½ years, should be modified, on the law, to vacate the sentence under indictment No. 2598/84, to grant the motion to suppress and to dismiss said indictment, and, except as thus modified, affirmed.

CARRO, MILONAS and SMITH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on January 16, 1986, unanimously modified, on the law, to vacate the sentence under indictment No. 2598/84, to grant the motion

to suppress and to dismiss said indictment, and, except as thus modified, affirmed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused, under indictment No. 2598/84, pursuant to CPL 160.50, not less than 30 days after service of a copy of the order entered herein upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.