THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
NORMAN CLOUD, Appellant.

First Department, June 4, 1991

APPEARANCES OF COUNSEL

*James J. O'Rourke* for appellant.

*Leonard I. Picker* and *Norman Barclay* of counsel *(Robert M. Morgenthau, District Attorney,* attorney), for respondent.

**OPINION OF THE COURT**

WALLACH, J.

Defendant is presently serving a sentence of imprisonment of from 15 years to life imposed on January 12, 1978, following his conviction after trial for the crime of murder in the second degree, as well as a concurrent sentence of from 6 to 18 years upon a plea of guilty to two counts of robbery in the first degree. His application to vacate these convictions pursuant to CPL 440.10, on the ground that evidence used at his trial was unconstitutionally obtained at the time of his arrest, has been denied without a hearing by Criminal Term, and he appeals to this court. Finding no error, we affirm. We uphold the determination of the motion court that exigent circumstances presented at the scene of defendant's arrest excused the requirement imposed by *Payton v New York* (445 US 573), that the police obtain a warrant therefor prior to their forced entry into this defendant's motel room.

Our dissenting colleagues do not challenge the criteria developed by prior Federal cases and adopted in our decision in *People v Cruz* (149 AD2d 151, 160) for testing whether exigent circumstances sufficient to support a warrantless arrest exist, but conclude that this case represents a shortfall, at least to the extent of requiring a hearing. On the contrary, we are satisfied that when each criterion is placed alongside the uncontested facts herein, the first five are overwhelmingly established and the sixth is not fatally impinged. Let us consider them *seriatim:*

(1) *The gravity or violent nature of the offense with which the suspect is to be charged:* The police had probable cause to believe that on September 20, 1976, defendant had shot to death Demetrios Lachaneas, a delicatessen counterman, in the course of a gunpoint robbery, and that the .38 caliber pistol used in that crime had been stolen by defendant from a

prostrate security guard in the course of an earlier supermarket stick-up.

(2) *Whether the suspect is reasonably believed to be armed:* The police had every reason to believe defendant still possessed the stolen pistol, and together with an accomplice present in the room, also possessed two sawed-off shotguns.

(3) *A clear showing of probable cause to believe that the suspect committed the crime:* A police informant, William Corrachio, had been in defendant's Holiday Inn room No. 908 on October 4, 1976, and directly observed the weapons; defendant had confessed his guilt of the murder to Corrachio who reported the confession to the authorities after his arrest on a weapons charge during the early morning hours two days later on October 6th. The reliability of Corrachio's information was buttressed by the independently verifiable circumstance that the murder pistol had been taken by force from the supermarket security guard, a fact not disseminated to the general public. Prior to entry later the same morning, the police had interviewed the motel chambermaid on the ninth floor, one Mrs. Turner, and her description of defendant as the room occupant matched not only that of Corrachio but also an independent physical description of the perpetrator who had fled from the murder scene.

(4) *Strong reason to believe that the suspect is in the premises being entered:* Mrs. Turner's information, together with Corrachio's story, was conclusive on this point.

(5) *A likelihood that the suspect will escape if not swiftly apprehended:* Six or seven police detectives under the command of one Sergeant Makon arrived at the Holiday Inn at about 10:45 A.M. Some time elapsed in interviewing Mrs. Turner on the ninth floor. Only at this time were the police in a position to fix with certainty the actual premises to be the subject of a warrant, and the legality of their conduct must be measured from this point. At the suppression hearing, Sergeant Makon testified that he was concerned about the approach of the noon hour, which was the motel check-out time. Surely this was a pertinent consideration. In addition, the police knew they were confronted with a desperate man and an accomplice who would not hesitate to use deadly force to avoid capture. That this was a rational conclusion was demonstrated by not only the known facts, but the testimony at trial that upon entry defendant dove for the pistol before being restrained.

(6) *The peaceful circumstances of the entry:* This is the only criterion which was not satisfied; entry here was accomplished by kicking down the partition which separated room 908 from an adjoining room. However, in assessing the importance of this variance, it must immediately be noted that the presentation of a warrant would not have altered the need for such force one iota. These suspects were not the type of persons who would resist illegal intrusion into their temporary "home", and yet be expected to give deference to the written mandate of the law. Furthermore, it is clear that the officers attempted to avoid a forced entry by attempting to use a housekeeping passkey (frustrated by an inside chain lock), a telephone ruse (the phone was busy or off the hook), and an unsuccessful stratagem posing as members of the motel maintenance staff. Only when these devices failed was force utilized as a last resort.

The six *Cruz* criteria are not to be viewed as definitive or exhaustive. "The list is illustrative, not exclusive; other factors may be relevant." *(United States v Martinez-Gonzalez,* 686 F2d 93, 100.) At least two other important factors support exigency.

(i) Mrs. Turner told the police that the occupants of room 908 included, in addition to defendant and his accomplice, "several females". No female was regarded as a fugitive. When the police entered, they actually found an undressed 18-year-old female and a 13-year-old boy.

In our view, any court or Judge should be extremely circumspect in second-guessing the judgment of a police commander at a scene such as this. Any delay, which the obtaining of a warrant would entail, clearly put at risk the safety of these uninvolved persons, who were obviously ideal potential hostages for use in effecting escape.

(ii) No bad faith can be imputed to the police. This entry, which took place on October 6, 1977, of course antedated the 1980 United States Supreme Court decision in *Payton v New York* (445 US 573, *supra)* precluding warrantless arrests in a suspect's home absent exigent circumstances. No social policy to control excessive zeal by law enforcement officers can have any relevance here *(cf., People v Harris,* 77 NY2d 434).

We are mindful that on a Federal habeas corpus proceeding, commenced by defendant and dismissed in 1983 for failure to exhaust State remedies, the District Court (SD NY) expressed in dictum the view that "On the * * * present state of the

record * * * the Court would be hard pressed to rule that the detectives' actions were justified." *(Cloud v Scully,* 568 F Supp 1101, 1105.) With all deference we are constrained to differ, and hold that on the trial record, fairly marshalled by the District Court, the exigent circumstances set forth above appear evident to us.

Far more indicative to us of the receptive approach to exigent circumstances prevailing in the Second Circuit Court of Appeals is the en banc October 1990 decision in *United States v MacDonald* (916 F2d 766) where a heavy majority of that court, applying the *Cruz* standards (Federally enunciated almost two decades before *Cruz* in *Dorman v United States,* 435 F2d 385, 392-393) set out above, sustained a warrantless arrest under circumstances less compelling (there were no potential hostages) than those at bar, and the police used a battering ram to gain forcible entry to a private apartment. In the final analysis, as the court noted in *MacDonald (supra,* at 769): "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action."

In our view, this case clearly transcends that threshold.

Accordingly, the order of Supreme Court, New York County (Burton B. Roberts, J.), entered January 13, 1984, which denied defendant's motion to vacate judgment of conviction rendered against him, after a jury trial, of murder in the second degree, and upon a guilty plea, of two counts of robbery in the first degree, and sentencing him to an indeterminate term of imprisonment of from 15 years to life on the murder conviction and two terms of from 6 to 18 years on the two robbery convictions, to run concurrently and which he is currently serving, should be affirmed in all respects.

CARRO, J. (dissenting). Defendant appeals, by permission of this court, from an order of the Supreme Court, which denied his motion, brought pursuant to CPL 440.10, to vacate the judgments respectively convicting him, after a jury trial, of murder in the second degree, and upon his plea of guilty, of two counts of robbery in the first degree. I would hold that the police action resulting in the seizure of defendant at his residence, a hotel room, as well as three weapons, to wit, a .38 caliber revolver and two sawed-off shotguns, was unconstitutional.

Specifically, the police action violated the rule established in

*Payton v New York* (445 US 573), which prohibits warrantless arrests in a suspect's home, even if supported by probable cause, except under exigent circumstances.* Contrary to the determination of the majority, I believe that there was insufficient proof of exigent circumstances to justify the warrantless forcible entry made by the police.

On September 20, 1976, Demetrios Lachaneas, a delicatessen clerk, was shot and killed in the course of a supermarket robbery. On October 6, 1976, an informant, William Corrachio, told detectives that defendant had committed the murder, using a .38 caliber revolver stolen by defendant from a security guard in the course of another supermarket robbery. Corrachio gave the detectives a description of defendant, and told them that two days previously, while he was in the hotel room where defendant was residing, defendant had not only admitted the crime, but had shown him the .38 caliber revolver he had used, and told Corrachio how he had obtained the weapon. Finally, Corrachio told the police they could find defendant, along with another man and two young women, in defendant's hotel room, number 908 of the Holiday Inn located at 440 West 57th Street, and cautioned the officers that defendant had guns in his hotel room.

The detectives verified the information Corrachio gave them and were informed that check-out time at the Holiday Inn was 12:00 noon. At 10:45 A.M., they went to the ninth floor of the hotel and confirmed the description of the occupants of room 908 with the chambermaid. Shortly thereafter, without a warrant, the detectives broke down the door and arrested defendant and one Robert Nappi, an accomplice of defendant in at least two robberies to which Nappi ultimately pleaded guilty. Recovered from the room were a .38 caliber revolver, two sawed-off shotguns and ammunition. Several hours later, after having been advised of his *Miranda* rights, defendant confessed to the robbery and felony murder of Lachaneas, and to numerous supermarket robberies.

Motions seeking to suppress the introduction of the weapons and postarrest statements were denied, and, following a jury trial, defendant was convicted on December 9, 1977 of murder. On December 12, 1977, defendant entered a plea of guilty to two counts of robbery in the first degree, and on January 12, 1978 he was sentenced. Defendant subsequently filed a motion,

---

* For purposes of Fourth Amendment analysis, defendant's hotel room is the equivalent of his home *(see, Stoner v California,* 376 US 483, 489-490).

pursuant to CPL 440.10, to vacate his murder conviction on the ground of ineffective assistance of counsel at his suppression hearing. This was denied by order entered March 21, 1979, which was later affirmed by this court.

Defendant then filed a petition for a writ of habeas corpus in Federal court, again asserting ineffectiveness of counsel, and further urging that his warrantless arrest was made in violation of the Fourth Amendment, and that his postarrest statements were unconstitutionally obtained. That petition was dismissed for failure to exhaust State remedies as to the constitutionality of his arrest. *(Cloud v Scully,* 568 F Supp 1101, 1103.) The case was accordingly remitted to State court to develop a record concerning whether there were exigent circumstances justifying the warrantless entry into defendant's hotel room, with the observation that on the basis of the record then existing, "the Court would be hard pressed to rule that the detectives' actions were justified" *(supra,* at 1105).

Upon remand, the Supreme Court found it unnecessary to hold a further hearing, and instead relied upon its findings of fact after the original suppression hearing, which are summarized in the majority's memorandum. After considering the circumstances surrounding the arrest, the Supreme Court concluded that exigent circumstances sufficient to justify an exception to the warrant requirement were present. I disagree.

Of the several factors pertinent to a determination as to whether exigent circumstances exist for a warrantless entry into a home or hotel room *(People v Cruz,* 149 AD2d 151, 160), one of the most important is the " ' "likelihood that the suspect will escape if not swiftly apprehended" ' ". The crucial question facing the police in most cases of this nature is whether they have time to obtain a warrant before effecting an arrest in a person's home, or whether the delay inherent in obtaining a warrant will result in the suspect escaping, evidence being destroyed, or a danger to the police or the public.

The Supreme Court found that "[t]he entire period from receipt of the information, to confirmation, to arrest was no more than six hours." One of the questions presented on this appeal is whether the People proved that they could not have obtained a warrant within this six-hour period. In *People v Cruz (supra)* this court unanimously rejected a finding that it would have taken "several hours" to obtain a warrant, even

at 4:30 A.M., although I note that our determination in that case rested in part upon provisions for oral and telephone applications which were not available in 1976 (CPL 690.35 [1]; 690.36).

When police officers break into a person's home or hotel room without a search warrant, the People bear a "heavy" burden of proof to show exigent circumstances sufficient to justify a deviation from Fourth Amendment requirements *(Welsh v Wisconsin,* 466 US 740, 749-750; *United States v Parr,* 716 F2d 796; *Johnson v Havener,* 534 F2d 1232, *cert denied* 429 US 889; *United States v Murrie,* 534 F2d 695; *United States v Cattouse,* 666 F Supp 480, *affd* 846 F2d 144, *cert denied* 488 US 929; *United States v Evans,* 629 F Supp 1544). Although the District Court in defendant's habeas corpus proceeding remitted the case specifically for an evidentiary hearing to enable the People to establish that exigent circumstances existed to justify the warrantless entry into defendant's hotel room *(Cloud v Scully, supra,* 568 F Supp, at 1105), the Supreme Court declined to hold such a hearing, and, as previously noted, relied instead upon the original record in defendant's suppression hearing to conclude that exigent circumstances existed.

Whether we focus upon the Supreme Court's finding that no more than six hours had elapsed from the receipt by the police of Corrachio's information until defendant's arrest, or whether we accept the majority's conclusion that the legality of the police conduct must be measured from the time the defendant's presence in room 908 was fixed with certainty, the People were required at the very least to introduce evidence as to how much time it would have taken to obtain a warrant. But the People introduced no such evidence, since they were not given the opportunity to do so as a result of the Supreme Court's failure to hold a hearing. As the People failed in establishing a necessary element for a finding of exigent circumstances, they have not satisfied their heavy burden of proof *(People v Cruz, supra,* 149 AD2d, at 161). This court has the power and the obligation to make new findings of fact when the Supreme Court's findings are against the weight of the evidence (CPL 470.15). We should do so here.

The majority points to a 12:00 noon check-out time at the hotel, apparently suggesting some outside time limit for the police to have obtained a warrant. However, the defendant was visited by Corrachio in his hotel room two days prior to the arrest, and that would suggest at least some continuity of

his presence there, as opposed to an overnight stay. There was no evidence that defendant had indicated to anyone at the hotel, or to Corrachio, that he was intending to leave the hotel, and no evidence that defendant had any residence other than at the hotel. These are the type of facts that might have warranted a finding that the police had reason to believe defendant intended to check out at 12:00 noon. But, again, there was no such evidence, and the People have accordingly not met their burden of proof.

The District Court pointedly observed that one detective could have gone to obtain an arrest warrant while the others waited in the hallway outside the door, and arrested the defendant if he attempted to leave *(supra,* 568 F Supp, at 1105). The Supreme Court responded that "[t]he posting of a guard sufficient to deal with the two armed suspects might well have alerted the defendant and his partner in crime to the police presence." Apparently the Supreme Court simply assumed that fact, because there is no evidence to support it.

Whether the posting of a guard in the hallway might have alerted the defendant and his partner to the police presence was surely an essential factor in determining whether there was an "urgent need" for the police to take immediate action, which in turn was the central question in determining whether exigent circumstances justified the warrantless entry *(United States v MacDonald,* 916 F2d 766, 769, *cert denied* — US —, 112 L Ed 2d 1177). As these questions, of constitutional dimension, were the very issues that the court was invited to consider after a hearing, I cannot agree that it was appropriate to resolve them without taking evidence.

The majority's conclusion, that any delay would have put at risk the safety of the two uninvolved persons found in the defendant's hotel room, cannot reasonably justify the decision by the police to forcibly enter without waiting to obtain a warrant, since the detectives had actually tried to call room 908 to "flush" the occupants out by informing them that the police were on the way up! Surely, that attempted ruse had far greater potential for bringing about an armed confrontation than merely posting police officers in the hallway until a warrant could be obtained.

Finally, I cannot agree with the startling principle espoused by the majority, that "any court or Judge should be extremely circumspect in second-guessing the judgment of a police commander at a scene such as this." In *People v Chestnut* (51

NY2d 14, 21, *cert denied* 449 US 1018), the Court of Appeals indicated that the courts will not second-guess the actions of policemen or policewomen who are "thrust into emergency situations where the difference between life and death is often measured in seconds," and permitted a frisk of a robbery suspect who was reportedly armed with a gun. In *People v Benjamin* (51 NY2d 267, 271), the Court of Appeals permitted a frisk in the context of rapidly developing circumstances indicating a possible threat to a policeman's life, observing that it would "be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety." *(See also, Borges v McGuire,* 107 AD2d 492, 501-502 [Kupferman, J., dissenting]: "[T]he courts are not to second-guess the action of a police person in an emergency.")

With all due respect to my colleagues, to say that the courts must be "extremely circumspect in second-guessing the judgment of a police commander in a scene such as this" simply begs the central question before us, which is whether exigent circumstances existed to justify the warrantless entry into the defendant's hotel room. The People have not demonstrated the existence of any emergency in this case, or circumstances even remotely approaching those present in *People v Chestnut* and *People v Benjamin (supra)* describing situations where the courts will not second-guess police actions taken to preserve their safety.

Under our system of law, it is the *police* who must be extremely circumspect in determining, on the scene, whether the confluence of probable cause and exigent circumstances justifies their warrantless entry into a person's home or hotel room. When the police do make such warrantless searches and seizures, which are "presumptively unreasonable" *(Payton v New York, supra,* 445 US, at 586), it is the duty of the courts to determine, objectively and without hesitation, whether the People have met their heavy burden of proof to show exigent circumstances sufficient to justify a deviation from Fourth Amendment requirements *(Welsh v Wisconsin, supra,* 466 US, at 749-750). I do not believe that the People have met their burden in this case.

I would accordingly vacate the judgments of conviction and remand for a new trial and a hearing to determine whether the taint of defendant's confession resulting from the *Payton*

violation had been attenuated *(People v Harris,* 77 NY2d 434).

MURPHY, P. J., and ELLERIN, J., concur with WALLACH, J.; CARRO and SMITH, JJ., dissent in an opinion by CARRO, J.

Order, Supreme Court, New York County, entered on January 13, 1984, is affirmed.