[651 NYS2d 967]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ILAN GLIA, Respondent.

First Department, December 19, 1996

## APPEARANCES OF COUNSEL

*Diana Fabi Samson* of counsel *(Norman Barclay* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for appellant.

*Steven J. Miraglia* of counsel *(Daniel L. Greenberg,* attorney), for respondent.

## OPINION OF THE COURT

RUBIN, J.

The question framed by defendant on this appeal is whether exigent circumstances justified the warrantless entry by police into his home in order to effect his arrest. Defendant contends that the conduct of the police in this case, evaluated in light of the factors enumerated by this Court in *People v Cruz* (149 AD2d 151, 160 [Sullivan, J.]), contravened his right to be free from governmental intrusion into the privacy of his home *(see, People v Gonzalez,* 39 NY2d 122, 127). However, because the arrest was initiated in a public place, the Fourth Amendment concerns expressed in *Payton v New York* (445 US 573) are not directly implicated, and the ensuing arrest of defendant in his home, without a warrant, does not contravene constitutional guarantees against unreasonable search and seizure (NY Const, art I, § 12; US Const 4th, 14th Amends).

At the suppression hearing *(Payton v New York, supra),* it was adduced that, on September 7, 1993, Detective James Duggan of the Manhattan Robbery Squad was assigned to investigate the robbery of a toll booth operator at the Triborough Bridge that had been committed two days earlier. Detective Duggan was told by a detective with the Special Investigation Division of the Triborough Bridge and Tunnel Authority that similar robberies had been committed at the Whitestone and Throggs Neck Bridges by a person matching the description given by the victim of the Triborough Bridge robbery. The suspect was described as a white male in his 30's or 40, driving

a silver or grey Monte Carlo and armed with a 9 millimeter semiautomatic pistol. Detective Duggan learned that detectives at the 49th Precinct's Robbery Identification Program had identified a suspect and had assembled a photographic array containing the suspect's picture. He borrowed the photo array and met with the victim of the Triborough Bridge robbery, who identified defendant as the man who robbed her.

Later that same day, Detective Duggan received permission from his superior officer to conduct surveillance of defendant's residence, located at 199-20 32nd Avenue in Bayside, Queens, for the purpose of making an arrest. Just before midnight, Detective Duggan, accompanied by Detectives Modica and Delany, arrived at the apartment building, a three-story structure with the entrance on 199th Street. There was "nothing going on" so they waited in their unmarked police car, parked across the street about a quarter of a block away.

At approximately 12:30 A.M., a white male, resembling defendant, parked a red Toyota in front of the building about 20 to 30 feet from the entrance. As the man exited the car, the detectives drove towards the Toyota, enabling Detective Duggan to confirm defendant's identity. When Detective Duggan got out of the car, defendant, who had been walking towards the building, ran for the entrance. The detective, who was not wearing a uniform and did not display a badge, yelled, "Police, Police, don't move." Defendant turned to look but continued running into the building, where he paused to unlock the vestibule door. The detectives followed him into the building, but defendant ran up the stairs and entered his second-floor apartment while they were still at the foot of the stairs.

Defendant did not respond to knocks on his apartment door. Detective Duggan went down to the street where he could observe defendant looking out of a window. The other detectives remained outside the apartment door while Detective Duggan flagged down a passing patrol car and requested assistance. The officers, assigned to the 111th Precinct, guarded the outside of the building and were later joined by other uniformed officers and Emergency Services personnel.

Detective Duggan returned to the apartment, where both he and defendant's wife, who had arrived on the scene, attempted to communicate with defendant through the door. Mrs. Glia did not have a key and there was no telephone in the apartment. Defendant was completely unresponsive and no sound could be heard coming from inside.

At approximately 1:30 A.M., Detective Duggan telephoned the District Attorney's office in Manhattan to attempt to obtain

a warrant. He was told by Assistant District Attorney Roig that "there was no way to get a warrant that night, that there was no judge to sign a warrant, that we would have to wait until the earliest 9 o'clock, 9:00, 10 o'clock the next morning." At this point, "fearing that there was evidence that could be destroyed, things could happen, he could hurt himself, we decided to go in and take him out of the apartment." The detective added, "Because all the robberies that were committed, he was armed with a gun and I assumed that he still had a gun on him." He stated that Mrs. Glia again asked her husband to come out and, after receiving no response, "Emergency Service personnel set up and forced the door open, entered the apartment and subdued Mr. Glia." They used a hydraulic device to gain entry. "It will break the jam[b], force the lock, whatever is holding the door". In searching the apartment to ascertain if anyone else might be present, a large bag of money was discovered on top of a dresser in a bedroom. The bag, which was marked "$10,000", was later found to contain $9,405. Defendant was taken into custody at approximately 2:30 A.M.

After obtaining a search warrant, Detective Duggan returned to defendant's apartment about noon that same day. Twenty-six rounds of .25 caliber ammunition and a holster for a .25 caliber gun were recovered from a closet. One .38 caliber or 9 millimeter round was found on top of the dresser from which the bag of money was recovered. At 6:30 P.M. that evening, the toll booth clerk identified defendant from a lineup as the man who had robbed her at the Triborough Bridge.

The next day, after being read his *Miranda* rights, defendant gave a statement to an Assistant District Attorney in Detective Duggan's presence. As recounted by Supreme Court: "Defendant stated a man named Shavon, who had been his roommate, had given him the money found in his apartment to buy a car. He said that he himself used a blue Mercedes and that the car used in the robberies was a Monte Carlo. Defendant further stated that he drove his car ahead of Shavon to show him the way to the bridges in the robberies. He owned the Mercedes registered * * * to John Mercado, also the owner of the red Toyota, for insurance reasons."

Defendant presented no evidence at the suppression hearing.

Supreme Court found that the police had probable cause to arrest defendant. However, it held that, pursuant to *Payton v New York* (*supra*), once defendant reached and crossed the threshold of his home, he could not be arrested unless one of the exceptions to the warrant requirement applied. Citing this

Court's decision in *People v Cruz* (149 AD2d 151, *supra*), the court rejected the People's argument that exigent circumstances justified the warrantless entry into defendant's home and suppressed the evidence seized from the apartment. Finding no attenuation between the arrest and defendant's subsequent statements, the court also held them to be inadmissible (citing *People v Harris*, 77 NY2d 434, 436; *People v Johnson*, 66 NY2d 398, 407). With respect to the lineup identification, the court found that while it was fairly conducted, it was not admissible since defendant would have been entitled to counsel if he had been arrested pursuant to a warrant (*People v Harris*, *supra*, at 440-441).

On appeal, the People contend that the court erred in holding that, in the situation confronted by the police in this case, a warrant was required to arrest defendant in his home. They argue, as they did at the hearing before Supreme Court, that the exigent circumstances exception to the warrant requirement justifies defendant's arrest and, even if analyzed under the criteria set forth in *People v Cruz* (*supra*), his warrantless arrest was nevertheless proper.

It should be noted that *People v Cruz* (*supra*) involved an immediate, forcible entry into a suspect's home and not, as here, the culmination of an arrest initiated on a public street. Justice Sullivan succinctly stated the fundamental concern raised by the circumstances of the defendant's apprehension in *Cruz* (*supra*, at 160-161): "Hearing no response to their knock after 'a minute or less', the officers knocked the door down and entered a darkened apartment. As the court recognized in *United States v Gomez* (633 F2d 999, 1006, *cert denied* 450 US 994), there can be 'no question' that kicking and banging on the door 'typifies the very sort of forcible governmental intrusion against which the Fourth Amendment should shield'". In the case at bar, by contrast, the detectives exercised great restraint in their pursuit of defendant and, as Supreme Court recognized, "chose to follow a routine procedure". They did not immediately progress to breaking down the door, but waited until other measures, including an attempt to obtain an arrest warrant, proved unavailing before instructing Emergency Services personnel to gain entry with a tool specifically designed for the task.

In holding defendant's arrest to be a *Payton* violation, Supreme Court seems to have accorded undue significance to Detective Duggan's decision "to follow a routine procedure", including the attempt to get a warrant. As a threshold

consideration, the operative question is whether, as a matter of law, a warrant was required under the circumstances, not whether obtaining one was perceived to be desirable or practical by the officer at the scene. As the Court observed in *People v Vasquez* (215 AD2d 118, 119, *lv denied* 86 NY2d 785), "No warrant is required to arrest a suspect in a public place where there is probable cause to believe that he has committed a crime (*United States v Watson*, 423 US 411; *United States v Santana*, 427 US 38)." Further, it is clear that the Court should not permit the constitutional protection afforded by *Payton* to be exploited to frustrate an otherwise lawful arrest, initiated outside a suspect's home. As the United States Supreme Court observed, "a suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place" (*United States v Santana, supra*, at 43 [suspect, confronted in doorway of her home, could not thwart arrest by retreating into house]; *accord, People v Jacobo*, 208 AD2d 432, *lv denied* 84 NY2d 1012 [warrantless arrest of defendant, confronted in hallway, not rendered improper by his retreat into private residence]; *People v Johnson*, 193 AD2d 35, *affd* 83 NY2d 831 [same]).

In view of Supreme Court's finding that the police had probable cause to arrest defendant (CPL 140.10), there is no question that they were justified in confronting him on the street in order to effect his arrest without a warrant. While the arresting officer is generally obliged to inform the suspect of his authority and purpose, the statutory requirement is rendered impractical by flight (CPL 140.15 [2]). The arresting officer is also statutorily empowered to "enter premises" to effectuate the arrest (CPL 140.15 [4]). The precise issue thus presented is whether the delay in pursuing defendant into his apartment removes this matter from the operation of *United States v Santana (supra)* and requires the police to establish that exigent circumstances justified the intrusion into his private dwelling pursuant to *People v Cruz (supra)*.

The prosecution should not be disadvantaged by the restraint exercised by the police any more than defendant should be permitted to benefit from his flight, which fortuitously ended in his residence. Mere delay in gaining entry to the premises does not obviate the exigency created by a suspect's escape into his home (*Matter of Pablo C.*, 220 AD2d 235, 236). In light of defendant's unresponsiveness to the entreaties of both his wife and Detective Duggan, the concern that "things could happen, he could hurt himself", as expressed by the detective, "did not

abate during the two-hour period that the police were at the scene but unable to enter the apartment" (*supra,* at 236).

This Court is in agreement with the People's position that the conduct of the arresting officer was entirely reasonable under the circumstances and was generally in accordance with the principles espoused in *People v Cruz (supra),* to the extent they are pertinent. In *Cruz,* this Court enumerated six factors to be considered in deciding whether circumstances justify the intrusion of police into a suspect's own home in order to effectuate an arrest without a warrant: " '(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect "is reasonably believed to be armed"; (3) "a clear showing of probable cause * * * to believe that the suspect committed the crime"; (4) "strong reason to believe that the suspect is in the premises being entered"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) the peaceful circumstances of the entry' " (149 AD2d 151, 160, *supra,* quoting *United States v Martinez-Gonzalez,* 686 F2d 93, 100, quoting *United States v Reed,* 572 F2d 412, 424, *cert denied sub nom. Goldsmith v United States,* 439 US 913). Supreme Court found that only three of these criteria were established by the testimony at the hearing: the suspect could reasonably be believed to be armed, there was probable cause for the arrest, and he was on the premises. While quoting language from *Cruz (supra,* at 160) which emphasizes the seriousness of the crime of armed robbery, the court nevertheless seems to have disregarded its status as a violent felony offense in assessing the perceived *Payton* issue (Penal Law § 70.02 [1]; § 160.15). The court's implicit conclusion that the particular crime for which defendant was sought fails to qualify as a grave offense contravenes the plain meaning of the Penal Law and must be rejected as a matter of law.

The argument advanced by the People at the close of the hearing did not, as Supreme Court stated in its decision, "claim that the only unsatisfied element in this case is the last one, since the police forcibly entered by breaking the lock on defendant's door with a specially designed tool." In any event, this element has no application to the facts of this case because if a suspect is to be precluded from frustrating a lawful arrest set in motion in a public place by the expedient of retreating into a private dwelling (*United States v Santana, supra*), it necessarily follows that the police officer may employ appropriate force to enter the premises in order to consummate that arrest (*see, Matter of Pablo C., supra* [door broken down by members of Emergency Services Unit]).

Detective Duggan cannot be faulted for the temperance he displayed in the situation confronting him. The detective tried to obtain a key to the apartment door from defendant's wife, attempted (at some length) to persuade defendant to surrender voluntarily and, only when these measures proved unavailing, resorted to forcing the door. This Court does not accept defendant's contention that application of the force necessary to gain entrance to premises to which a suspect has retreated to avoid arrest is unreasonable. Therefore, the Court does not share his conclusion that the constitutional right to be free from governmental intrusion within the privacy of the home was infringed by the conduct of the police in this case.

In regard to the likelihood of defendant's escape, there is no reason to disturb Supreme Court's determination that this prospect was most improbable. However, some comment is in order with respect to the court's conclusion that it is unlikely evidence would have been destroyed or removed from the premises in the additional time needed to obtain a warrant (if it had not already been destroyed or removed). The court seems to have placed altogether too much emphasis on this factor in suppressing the evidence recovered from defendant's apartment. The impending destruction of evidence may justify breaking down a door (*United States v Gomez, supra*); however, this is not one of the enumerated factors to be taken into account in the evaluation of a warrantless arrest in the home (*People v Cruz, supra*, at 160). *People v Knapp* (52 NY2d 689), upon which Supreme Court relied, deals solely with the situation in which a warrantless search was conducted after the suspects had been taken into custody, and is not directly on point. In any event, that the immediate prospect of the destruction of evidence may justify an intrusion into a suspect's home (*People v Knapp, supra*, at 695-696) does not require the obverse conclusion that such intrusion is justified *only* by the immediate prospect of the destruction of evidence.

Accordingly, the order of the Supreme Court, New York County (Murray Mogel, J.), entered August 8, 1994, which granted defendant's motion to suppress physical evidence, statements made to police and lineup identification testimony, under indictment No. 9112/93, charging him with robbery in the first degree, should be reversed, on the law, the motion denied, and the matter remitted to Supreme Court for further proceedings.

ROSENBERGER, J. P. (dissenting). "In terms that apply equally

to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (*Payton v New York*, 445 US 573, 590.)

The police entered the defendant's home, at night, forcibly breaking the door, without a warrant. The police had the house surrounded, and made their entry some two hours after the defendant had refused them admission by not responding to their knocking at the door or to their other attempts to communicate with him. They knew that he was in the house since he was seen through a window.

The majority concede that there was no likelihood that the defendant would escape or that evidence would have been recovered or destroyed. The crime occurred on September 5th, the entry into the defendant's home on September 8th. As described by the majority, the defendant was already approaching his home when the police first saw him. There was no hot pursuit of one escaping from the scene of a crime.

The majority holds that no constitutional protections, either State or Federal, are implicated because "the arrest was initiated in a public place". Cited in support of this holding is *United States v Santana* (427 US 38). In that case, the Court held that Santana could not defeat an otherwise proper arrest, set in motion in a public place, by retreating into a private place. Santana was standing in the doorway of her house when the police sought to arrest her. She retreated. The officers followed through the open door, completing the arrest in the vestibule. Since there was probable cause for the arrest, Justice White, in his concurring opinion, noted "In these circumstances, a warrant was not required to enter the house to make the arrest, at least *where entry by force was not required*" (*supra*, at 43-44 [emphasis supplied]). Similarly, in *People v Jacobo* (208 AD2d 432) and People v Johnson (193 AD2d 35), also cited by the majority, the records reveal that the defendant in each of those cases was in the open door of his apartment when the arrest was initiated. In each of those cases, the pursuing officers entered, in hot pursuit, through the open entry door. The facts here are, of course, quite different.

The prosecution further maintains that exigent circumstances justified the entry and arrest. The majority agrees.

Several factors are to be examined when determining whether exigent circumstances justify warrantless entry. These

include, (1) the gravity or violent nature of the alleged underlying offense; (2) whether the suspect is reasonably believed to be armed; (3) the clear showing of probable cause to believe that the suspect committed the crime; (4) a strong reason to believe that the suspect is in the premises being entered; (5) the likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry (*People v Cruz*, 149 AD2d 151, 160). Several of these criteria have plainly been satisfied in the instant case. The defendant was suspected of robbery in the first degree, a serious and violent crime. The results of a photo array had established probable cause to believe that he had committed the crime. He was, arguably, reasonably believed to be armed (although he was not seen to be armed when entering his home; no weapon was recovered in a search of the home; and the crime had occurred several days earlier). There surely was strong reason to believe that the suspect was in the premises, since he had been seen entering and had been seen through a window.

Others of these factors, however, were not established. As has been conceded, there was no likelihood of escape. The suspect was in his home, which was surrounded by detectives, uniformed police officers from the local precinct, and officers of the Police Department Emergency Service Unit. Further, the circumstances of the entry were hardly "peaceful". Although the majority described the entry as the result of "restraint", the record compels a different conclusion. Detective Duggan, the main witness for the prosecution, in describing the device used to gain entry, testified: "It was mechanical where you pump it up and it goes through the door. * * * It will break the jam[b], force the lock, whatever is holding the door; it will just forcibly break that so the door can open." In fact, as pointed out by the Hearing Judge in his written decision, the People conceded that the element of "peaceful circumstances of entry" was not satisfied here.

The lack of exigency is further demonstrated by the fact that Detective Duggan attempted to apply for a warrant. It is thus apparent that he appreciated the necessity for such a warrant where there was no likelihood of escape. (The hearing court found the detective's stated reason for not obtaining a warrant "unconvincing".)

While not included in the exigency criteria set forth in *People v Cruz (supra)*, also to be considered is the likelihood of essential evidence being destroyed. This case did not involve drugs or other evidence which is readily capable of destruction.

And, even if it had involved such materials, the wait of over two hours to enter the defendant's home would have rendered such concerns academic. After listening to the testimony, the hearing court found that this "suggestion * * * strains credibility" and that it was "unconvincing".

Since there was no search warrant, no consent, and no exigent circumstances, the police entry into the defendant's home, from which he could not escape, during the middle of the night, by force was unreasonable and illegal. (NY Const, art I, § 12; US Const 4th, 14th Amends.) The fruits of that entry were properly suppressed since the initial illegality was not attenuated (*People v Harris*, 77 NY2d 434).

ELLERIN and KUPFERMAN, JJ., concur with RUBIN, J.; ROSENBERGER, J. P., dissents in a separate opinion.

Order, Supreme Court, New York County, entered August 8, 1994, reversed, on the law, the defendant's motion to suppress physical evidence, statements made to police and lineup identification testimony denied, and the matter remitted to Supreme Court for further proceedings.